**Louis W. SILVERII, Administrator of the Estate of Dominick J. Mash, Deceased, Appellant,**

**v.**

**Wilson KRAMER**

**and**

**John W. Price.**

**No. 13968.**

United States Court of Appeals Third Circuit.

Argued Nov. 5, 1962.

Decided Feb. 18, 1963.

---

Sidney L. Wickenhaver, Philadelphia, Pa. (Albert S. Shaw, Jr., Philadelphia, Pa., John D. Lyons, Jr., Greensburg, Pa., Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., Scales & Shaw, Greensburg, Pa., on the brief), for appellant.

Howard R. Detweiler, Philadelphia, Pa., for appellees.

Before GANEY and SMITH, Circuit Judges, and AUGELLI, District Judge.

GANEY, Circuit Judge.

The plaintiff, Louis W. Silverii, Administrator of the Estate of Dominick J. Mash, Deceased, appeals from the judgment entered in the district court for the Eastern District of Pennsylvania, setting aside a verdict against the defendants, Wilson Kramer and John W. Price, in an action brought to recover damages through the death of plaintiff's decedent which resulted from a rear-end collision on Route 22, near the Fullerton exit, in the Commonwealth of Pennsylvania. Jurisdiction is based on diversity of citizenship, and by reason of the fact that the accident occurred in Pennsylvania, the law of that State governs.

After the plaintiff had rested his case, which was tried before a jury, the defendants moved for a directed verdict, which motion was denied. The defendants offered no testimony and the case was submitted to the jury which returned a verdict in favor of the plaintiff under the Pennsylvania Wrongful Death Act[1] and the Survival Act,[2] in the amount of $73,135 in favor of the widow and three children on both causes of action. The court later entered an order directing judgment n. o. v. in favor of the defendants with the further direction that if the judgment was reversed by the Court of Appeals, the defendants' motion for a new trial was to be granted.

The record discloses that on December 3, 1946, at about 2:30 a. m. on Route 22 in Whitehall Township, about one mile north of Allentown, Pennsylvania, the appellant met his death instantly when the tractor-trailer which he was operating collided with the rear end of the tractor-trailer driven by the defendant, Price, and owned by the defendant, Kramer. Route 22 runs approximately east and west and comprises a four-lane highway, two lanes on each side of a medial strip about four inches in height. The Fullerton exit consists of a ramp running off the right lane of Route 22 and this concrete ramp, leading to the Borough of Fullerton, forms, with the right lane of Route 22, a triangular or V-shaped area, composed of earth and grass, alongside of which is berm or shoulder, eight to ten feet in width, sufficient for a truck to travel on, composed of stones and earth, forming a smooth surface which parallels the cement portion of the highway in an eastwardly direction, far beyond the area here in question.

There were no eyewitnesses to the happening of the collision, except the driver, Price. He was not called to testify by the defense, but was called only in the plaintiff's case, and it is necessary to reconstruct much of its happening, by circumstantial evidence, from the measurements of record, showing the distances both trucks traveled from their respective positions, the time it took and the testimony of the witnesses with respect to these positions and measurements.

In so doing, the canon of interpretation for judicial review requires us to accept as true all the facts which the evidence tends to prove, drawing against the party making the motion all reasonable inferences most favorable to the party opposing the motion, and if the evidence is of such character that reasonable men, in an impartial exercise of their judgment may reach different conclusions, the case should be submitted to the jury. Turner v. Atlantic Coast Line R. Co., 5 Cir., 292 F.2d 586, 587; Galloway v. United States, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458; Swift & Co. v. Morgan & Sturdivant, 5 Cir., 214 F.2d 115, 116, 19 A.L.R.2d 924; Atlantic & Pacific Stores, Inc. v. Pitts, 4 Cir., 283 F.2d 756, 757; Budge Manufacturing Co., Inc. v. United States, 3 Cir., 230 F. 2d 414, 416; Gash v. Lautsenhezer, 405

[1] Act of April 15, 1851, P.L. 669, § 19, 12 P.S. § 1601.

[2] Act of April 18, 1949, P.L. 512, art. VI, § 601, 20 P.S. § 320.601.

Pa. 312, 176 A.2d 90. Likewise, in Tennant v. Peoria & Pekin Union Railway Co., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520, the Court states: "It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. Washington & Georgetown R. Co. v. McDade, 135 U.S. 554, 571, 572 [10 S.Ct. 1044, 34 L.Ed. 235]; Tiller v. Atlantic Coast Line R. Co., supra [318 U.S. (54) 68, 63 S.Ct. (444) 451 (87 L.Ed. 610)]; Bailey v. Central Vermont Ry., 319 U.S. 350, 353, 354, [63 S.Ct. 1062, 1064, 87 L.Ed. 1444]."

The defendant, Price, was the driver of a tractor-trailer, thirty-five feet in length, loaded with 15–16 tons of coal, and was proceeding eastwardly in the right lane of Route 22 when about 1500 feet west of the Fullerton exit, his left rear tire blew out and he proceeded to the nearest place where he would have the opportunity to drive off the highway and change the tire. The place he chose was the V-shaped or triangular area, heretofore described, formed by the junction of the Fullerton exit's eastern ramp and the right lane of Route 22. A portion of the rear of the defendant's truck was on a part of the concrete surrounding the V-shaped area, the front thereof facing eastwardly and directly in front of the berm, running along the cement portion of the highway. It took him about twenty minutes to replace the blown-out tire and he was helped in the operation by a young man whom he had picked up at the site, whose name he did not know and who was not available at the trial. He said that he noticed all the lights of his tractor-trailer burning when he went around the rear of it and removed a block which was under one of the wheels and that he looked up the highway to the west and saw no lights whatsoever of an approaching vehicle; that he proceeded along the trailer and got into the cab and looked through his rear-view mirror and again saw no lights coming toward him. He further testified that "I pulled out down the highway." and then the following colloquy ensued:

"Q. Now, what was the position of your truck when the accident happened?

"A. Straight on the highway going east.

"Q. What part of it?

"A. On the right lane.

"Q. What is that?

"A. Going east on the right lane.

"Q. Was any part of it on the shoulder?

"A. No, it was on the cement.

"Q. Now, were you going directly——.

"A. East.

"Q. ——parallel to the highway when this happened?

"A. Parallel. I did not turn out. I went parallel.

"Q. You were going parallel with the highway when the accident happened?

"A. Yes, sir.

"Q. What did you say you think your speed was?

"A. Well, anywhere between 25 and 30 miles an hour."

With the exception of Price's general statement that the collision occurred right after he entered the highway from the place where he had been parked, this is all of the evidence in the record from the time he was parked until the collision.

From the apex of the V-shaped triangle—and Kramer's tractor-trailer was

inside it—to the area where the plaintiff's decedent's tractor-trailer collided in the right lane with the rear end of defendant's truck, was approximately 105 feet—the point of impact could only be roughly approximated from the gouging in the concrete and the broken glass and scattered debris. It must be noted here, since this is all of the testimony of record concerning defendant's movement from the V-shaped area, that he does not say how far he went down the berm before he entered the cement portion of the road, as Exhibit P-6 shows a truck parked exactly as it was the night of the collision with the front wheels heading directly east down the berm. In this position, the defendant must have proceeded some distance down the berm, as his tractor-trailer, thirty-five feet in length, could not have made a right-angle turn onto the cement portion of the highway. This is of the utmost importance because his testimony above only describes his position at the time of collision, that he was "going parallel with the highway when the accident happened." Though Price says he pulled out down the highway, he does not designate it as the cement portion thereof, yet he definitely mentions the cement portion as the place where he was struck on the highway. Price further testified that his tractor-trailer started from a standstill position and had moved into fourth gear and was going between 25 and 30 m. p. h. at the time of collision. This, it must be granted, is a very rapid acceleration for a tractor-trailer so loaded, but if we take the mean of the outer limit, he averaged 15 m. p. h., which would have required a fraction over four seconds for him to cover the 105 feet from its position within the apex of the V-shaped area. When we take into consideration the length of the truck, thirty-five feet, and the time it would take within this distance for it to enter on the cement portion of the highway, it could very easily have been a matter of two, or possibly three, seconds before becoming parallel thereon, leaving but a second or two before impact, from which the jury could reasonably infer there was an abrupt entrance in disregard of an oncoming lighted vehicle, as defendant admits seeing decedent's lights immediately before the time of impact.

The plaintiff's decedent was driving a tractor-trailer loaded with caps, the gross weight overall being some 51,000 pounds, in an eastwardly direction along Route 22. While there is a slight downgrade of three per cent from the brow of an incline 695 feet west of the area of collision, it was uncontradicted that from the eye level of the driver of the truck at the apex point where the defendant repaired his tire, or a person standing five feet in height above the ground, could see the headlamps two and a half feet above the ground of an approaching vehicle, 730 feet to the west, that is the headlamps and not the beams that come from it.

The presumption obtains that the decedent exercised due care for his own safety at the time of his death, Tennant v. Peoria & Pekin Union Railway Co., supra; Looney v. Metropolitan Railway Co., 200 U.S. 480, 26 S.Ct. 303, 50 L.Ed. 564, and since the speed limit for trucks on this route was 50 m. p. h. and he was operating his tractor-trailer at or within this permissive limit, it would take the plaintiff's decedent nine and one-half seconds to travel 730 feet to reach the area where defendant said he looked and saw no lights approaching and pulled away. Since it took the defendant, at the most, four seconds from this point—the V-shaped area—to the area of impact, it is obvious that the plaintiff's decedent's truck was within this 730 feet distance when he looked. If we add to this unbroken view westwardly the 105 feet to the point of collision, there is a total of 835 feet, and again, taking into consideration the fact that plaintiff's decedent would be traveling at the permissive rate of speed of 50 m. p. h., the defendant would have had more than eleven seconds to observe the lights of plaintiff's decedent's tractor-trailer before impact, although, as adverted to above, he testified he never saw the lights of plaintiff's de-

cedent's tractor-trailer, except at the moment before the impact. To say, as the defendant did, that he saw no lights from either of these points as he looked westwardly, is to deny seeing that which he obviously must have seen when he looked. Favazzo v. Philadelphia Transportation Co., 169 Pa.Super. 433, 82 A.2d 538. Accordingly, since he saw no lights where there were lights, it was a negligent act to come on the highway suddenly, as we have seen earlier, in the face of an oncoming lighted vehicle.

 Again, it was a reasonable inference for the jury to draw that the plaintiff's decedent was not contributorily negligent in the circumstances of this situation. This because plaintiff's decedent cannot be chargeable with anticipating negligence, as he had every right to assume a lighted truck on the berm would not enter the cement portion of the highway without exercising due care. The rule of law needs no citation that contributory negligence must be proven by the defendant by the fair preponderance of the evidence and on the record the defendant has not met his burden. It is contended, however, that decedent was contributorily negligent in that he was in violation of § 1002(a) of the Pennsylvania Motor Vehicle Code, then in effect, which required a person driving a vehicle on the highway not to proceed at a greater speed than will permit him to bring the vehicle to a stop "within the assured clear distance ahead." However, under the circumstances, as we have detailed them, the decedent was not contributorily negligent because it was a reasonable inference for the jury to draw that when the defendant's truck entered the cement or concrete right lane of the highway, plaintiff's decedent had already reached and gone beyond the outer limits of his assured clear distance ahead.

██ To buttress the fact of the defendant's negligence, as well as the decedent's lack of contributory negligence, the testimony shows (1) that there was not the slightest trace of skidmarks on the highway, evidencing the fact that plaintiff's decedent had no time to apply his brakes before striking the rear of defendant's truck making its entrance on the right lane, (2) the force of the impact was extremely great as it sheared off both rear wheels of the defendant's coal truck and drove it 190 feet forward, and the plaintiff's decedent's truck 124 feet forward, smashing the tractor or cab back into the trailer, killing the decedent instantly, and (3) the greatest damage to the rear end of the defendant's truck was the left portion thereof which is some evidence of the fact that the plaintiff suddenly attempted to swerve to the left to avoid striking the defendant's truck entering the right lane at the last moment, as well as in accordance with the fact that the defendant's tractor-trailer, in coming on the cement portion of the roadway from the berm, would have its left rear end nearest to the approaching tractor-trailer of the plaintiff's decedent, as it was making itself parallel with the highway.

The lower court, in granting judgment n. o. v., relied entirely on Makowsky v. Povlick, 3 Cir., 262 F.2d 13, decided in this Circuit in 1959, where a compulsory dismissal was entered by the Court at the close of plaintiff's case, it not being submitted to the jury. An examination of the factual circumstances of that case makes it inapposite here. In it, there was no question as to the point when defendant's vehicle came on the highway, as it was uncontradicted that he entered the highway from a private driveway and the collision occurred anywhere from ten to fifty feet away from it, which does not obtain in our case.

However, additionally, we have the really differentiating factor which rules out completely the Makowsky case, supra. In our case, we have a tractor-trailer parked on the berm and to get on the cement portion of the highway, it obviously must have traveled some distance along the berm, during which it should have seen an oncoming lighted vehicle—for the defendant testified he saw its lights at the time of impact—but, nevertheless, moved onto the outside

lane of the highway and the collision occurred.

Here, there was a reasonable inference for the jury to draw—and they did so by their verdict—that the defendant-driver, while standing in the apex area where his truck was parked, and again when he was seated in the cab, should have seen the oncoming lighted vehicle of the plaintiff's decedent, and only have entered the cement portion of the highway with the utmost caution, as the plaintiff's decedent, as has been adverted to, need not have anticipated a negligent entrance as the circumstances show, onto this outside lane along which he was proceeding in an easterly direction.

The judgment of the lower court in granting judgment n. o. v. will be reversed.

The lower court here entered an alternative order granting a new trial on the ground that the verdict was against the weight of the evidence.

■■ Where, as here, this order is coupled with a final judgment, the entrance of judgment n. o. v., the matter is reviewable. Youdan v. Majestic Hotel Management Corp., 7 Cir., 125 F.2d 15. The disposition of these motions is a matter of federal procedure and is, in no wise, subject to state practice, Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350, and a substantial body of federal law has been built up over the years concerning these procedures. Felton v. Spiro, 6 Cir., 78 F. 576; Mt. Adam & E. P. Inclined Railway Co. v. Lowery, 6 Cir., 74 F. 463; Commercial Credit Corp. v. Pepper, 5 Cir., 187 F.2d 71; Eastern Air Lines, Inc. v. Union Trust Co., 99 U.S.App.D.C. 205, 239 F.2d 25.

■ It is well settled that the granting or refusing of a new trial is a matter resting in the sound discretion of the trial judge and his action thereon is not reviewable upon appeal, save in the most exceptional cases. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147; Fairmont Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439. While this Circuit has held that motions for new trials granted because the verdict was against the clear weight of the evidence, should be carefully scrutinized where no undesirable or pernicious element has been introduced into the trial, and that the reviewing court should exercise a closer degree of supervision than where some such matter, as here adverted to, has obtruded into the trial, Lind v. Schenley Industries, Inc., 3 Cir., 278 F. 2d 79, in this instance due to the paucity of evidence in connection with the actual happening of the collision, we cannot view the granting of a new trial as a clear abuse of discretion. Garrison v. United States, 4 Cir., 62 F.2d 41, 42; Menneti v. Evans Construction Co., 3 Cir., 259 F.2d 367, 371; Morris Brothers Lumber Co. v. Eakin, 3 Cir., 262 F.2d 259, 265; Peters v. Smith, 3 Cir., 221 F. 2d 721, 725.

The judgment of the lower court in granting a new trial will be affirmed.