Peter MENIO

v.

**PHILADELPHIA, BETHLEHEM AND NEW ENGLAND RAILROAD COMPANY.**

Civ. A. No. 26813.

United States District Court
E. D. Pennsylvania.

Feb. 26, 1963.

Cornelius C. O'Brien, Jr., Philadelphia, Pa., for plaintiff.

F. Hastings Griffin, Jr., Philadelphia, Pa., for defendant.

LUONGO, District Judge.

Plaintiff, who was injured while working for defendant railroad, brought suit under the Federal Employers' Liability Act and under the Safety Appliance Act. The court directed a verdict for the defendant in the FELA action, and in the action under the Safety Appliance Act the jury returned a verdict for the plaintiff in the amount of $20,000.

Defendant moved: (1) for a new trial; (2) to amend the judgment; and (3) for judgment n. o. v. At oral argument defendant withdrew the motion to amend the judgment and abandoned the motion for judgment n. o. v. There remains for disposition only the motion for new trial.

Defendant's motion is asserted on several grounds, only two of which require comment; first, that the jury did not agree upon a verdict (or, alternatively, if it did, it was the result of an improper compromise), and second, that the trial judge was unduly critical of defendant's counsel and thereby prejudiced the defendant's case.

 Defendant's first claim is based upon what transpired upon the poll of the jury after the forelady had announced the verdict in favor of the plaintiff. The transcript of the taking of the verdict and the poll of the jury is set forth in extenso in Appendix "A" attached to this opinion. Defendant contends that the colloquy set forth therein, particularly the responses of juror No. 1 ("We were in favor of the defendant, but some of them disagreed and they finally came to a conclusion to allow the plaintiff $20,000 damages.") and juror No. 2 ("They were in favor of the defendant, but they wanted the defendant—the plaintiff to get his expenses.") make it quite evident that at least jurors Nos. 1 and 2 were not in agreement with the verdict in favor of the plaintiff, that the $20,000 verdict for plaintiff represented a compromise and was rendered in complete disregard of the instructions of the court.

 In my view, the quoted remarks reveal only that during the course of the jury's deliberations there probably were differences of opinion concerning liability and damages.[1] This is the very essence of our system of trial by jury. We can only concern ourselves with whether the ultimate result announced by the jury is the one at which it arrived unanimously; we cannot inquire into the process by which it arrived at that conclusion.[2]

 Counsel for defendant complains because I admonished the jury that the court was interested only in the verdict and not in the means by which the jury arrived at that verdict. It was proper to do so.[3] Actually, the admonition

1. In Havranek v. Pittsburgh, 344 Pa. 375, at pages 379–380, 25 A.2d 703, at page 705 (1942) Mr. Justice Stern states: "The mere statement by the four jurors that they were not 'satisfied' with the verdict was of no legal significance, because jurors frequently agree upon verdicts with which many or all of them are not 'satisfied', compromises being required if a unanimous verdict is to be obtained. The motive, if not corrupt, which induces jurors to acquiesce in a verdict is immaterial. Though here the four jurors may have agreed against their own 'better judgment', the essential point is that they did agree, and, even if not 'satisfied,' they did not object to the announcement of the verdict as being the verdict of the jury, nor declare that they, or any of them, found for the plaintiff."

2. Mattice v. Maryland Casualty Co., 5 F. 2d 233 (D.C.W.D.Wash. ND 1925): "All the authorities agree that the only verdict is that which the jury announces orally to the court, and is received and recorded as the jury's finding."
 Also see Havranek v. Pittsburgh, supra, n. 1.

3. In Harrison v. Paramount Pictures, Inc., 115 F.Supp. 312 (D.C.E.D.Pa.1953) affirmed 211 F.2d 405 (3rd Cir. 1954), cert. den. 348 U.S. 828, 75 S.Ct. 45, 99 L.Ed.

should have been given before the jury was polled, to forestall revelation by the jurors of anything other than whether each was in agreement with the verdict as announced by the forelady.

Here there is no question that the jury ultimately and unanimously decided in favor of the plaintiff. It is true that during the poll, juror No. 2 answered that she had found for the "defendant", but upon careful questioning by the court it became obvious that, while she may have temporarily confused the terms "plaintiff" and "defendant", she had not the slightest doubt that her ultimate finding was for "Mr. Menio, for the plaintiff".[4]

■ Defendant argues that the amount of the verdict, $20,000, is clear evidence that the members of the jury compromised and awarded the plaintiff expenses only, with no allowance for pain and suffering, consequently a new trial should be awarded.

■ For the defendant to ask, in effect, for a new trial for inadequacy of the verdict is indeed novel, but its contention in that regard must be rejected. The extent of plaintiff's injury and the degree of disability resulting therefrom was keenly contested. After plaintiff sustained the injury for which he sought recovery in this suit, he went into the contracting business. The amount of his earnings from that business, the nature and amount of work he personally performed, the extent of his disability and its effect on his earning capacity were all issues concerning which counsel argued vigorously to the jury. "The very essence of [the jury's] function is to select from among conflicting inferences and conclusions that which it considers most reasonable." Silverii, Admr. v. Kramer, et al., 314 F.2d 407 (3 Cir., 1963). Which inferences and conclusions the jury accepted in arriving at its verdict cannot be known. To assume from the off-hand remark by one juror that "they" wanted plaintiff "to get his expenses", that the jury simply added up plaintiff's loss of income from the date of the accident to the time of trial and awarded that amount to plaintiff, would be to ignore completely all the inferences which the jury could reasonably have drawn from the evidence and which would support its verdict. How much the jury awarded to the plaintiff as loss of earnings to the time of trial, how much it awarded to him for loss of future earning capacity, how much for pain and suffering, whether it believed plaintiff's expert that plaintiff would require an operation and how much it might have allowed for that operation [5] are all matters

653 (1954), a case where Judge Kirkpatrick was faced with a similar problem, he stated at page 315:

"The Court endeavored to find out what the juror intended his verdict to be and *declined to discuss his mental operations with him.*" (Emphasis supplied)

In that case, however, since the juror continued to give contradictory answers the Court concluded that he was not in agreement with the others. In the instant case the court was and is satisfied that she was in agreement with the others.

4. In Hilleary v. Earle Restaurant, Inc., 109 F.Supp. 829, at page 839, (D.C.D.C. 1952), a somewhat similar case, the court stated:

"This was obviously not a case of a dissenting juror, * * * but rather an embarrassed or nervous juror, who, when she unexpectedly heard her name called first on the poll, was startled and answered in confusion, stating a verdict which she did not intend and later corrected on being questioned carefully by the court. Under the circumstances, the misstatement did not indicate that the verdict was not unanimous or that there was need for further deliberation."

For example of a case, where the court ordered a new trial because of the obvious confusion on the part of one of the jurors, see United States v. Canale, 163 F.Supp. 445 (D.C.E.D.Pa.1958). There, during the poll of the jury, when asked how he found with respect to one of the parties, the foreman stated: "We didn't take a vote on that."

5. Plaintiff's doctor's testimony indicated an estimated total cost of $1,150.00 for hospital, surgical and other expenses.

committed to the secrecy of the jury room. Suffice to say that the award, $20,000, has ample support in the evidence.

█ The second major reason assigned by defendant in support of its motion for new trial is that I was unduly critical of defendant's counsel. This complaint stems from a ruling made in the course of plaintiff's rebuttal speech. Counsel for plaintiff argued his recollection of certain portions of the testimony as differing from that argued by defendant's counsel in the latter's summation to the jury. Defendant's counsel objected and was overruled. He now charges that, in overruling the objection, and making the statement which accompanied the ruling, I entered into the controversy "and for some reason lined up on the wrong side".

Defendant did not order the record transcribed, consequently oral argument on this motion was had without benefit of the transcript. I have since had the portion in question transcribed. It is set forth in Appendix "B". The transcript is a sufficient answer to the complaint. It is difficult to imagine a more innocuous or more appropriate comment under the circumstances. I have the feeling that the complaint about that incident reflects disappointment over the outcome of the trial rather than a sincere belief on the part of counsel that he had been prejudicially chastised by the court in the jury's presence.

At the conclusion of the trial, after the jury had been polled and the verdict recorded, defendant's counsel said: "Goodnight. Thank you, Your Honor, for the fine trial."

It was. The motion is denied.

APPENDIX "A"

CHIEF DEPUTY CLERK (MR. COMEY): Members of the jury, please rise.

Members of the jury, have you agreed upon your verdict?

THE FORELADY: Yes.

CHIEF DEPUTY CLERK: Do you find in favor of plaintiff or defendant?

JUROR NO. 5: Plaintiff.

THE COURT: The forelady will answer.

THE FORELADY: The jury has agreed to allow the plaintiff $20,000 damages.

THE COURT: All right. Will you record the verdict.

MR. GRIFFIN: Would Your Honor have the jury polled.

THE COURT: All right. Will you poll the jury, please.

CHIEF DEPUTY CLERK: Juror No. 1, do you find in favor of the plaintiff or defendant?

JUROR NO. 1: We were in the favor of the defendant, but some of them disagreed and they finally came to a conclusion to allow the plaintiff $20,000 damages.

THE COURT: Well, now, we have to ask this question. Answer the question that the clerk has put to you.

CHIEF DEPUTY CLERK: You, Juror No. 1, how do you now find—for the plaintiff or for the defendant?

JUROR NO. 1: For the plaintiff.

CHIEF DEPUTY CLERK: In what amount do you assess damages?

JUROR NO. 1: What is that?

CHIEF DEPUTY CLERK: In what amount do you assess damages?

JUROR NO. 1: $20,000.

CHIEF DEPUTY CLERK: Juror No. 2, do you find in favor of plaintiff or defendant?

JUROR NO. 2: Defendant.

CHIEF DEPUTY CLERK: In favor of whom?

JUROR NO. 2: Defendant.

A JUROR: No, no, no.

JUROR NO. 2: Oh, did they find to— I don't know.

THE COURT: Juror No. 2—

JUROR NO. 2: Let me explain. They wanted—

THE COURT: We only want—

JUROR NO. 2: They were in favor of the defendant, but they wanted the defendant—the plaintiff to get his expenses.

THE COURT: Juror No. 2, we like to avoid, if at all possible, finding out how a jury arrives at what they ultimately determine.

The question that is put to you now is: Do you find for the plaintiff, who is Peter Menio, or for the defendant, which is the Philadelphia, Bethlehem and New England Railroad?

JUROR NO. 2: Well, then it would be for Mr. Menio, for the plaintiff.

THE COURT: You find for the plaintiff, Mr. Menio?

JUROR NO. 2: That is right.

THE COURT: Would you then ask the question of Juror No. 2.

CHIEF DEPUTY CLERK: And in what amount do you assess damages?

JUROR NO. 2: $20,000.

(The remaining jurors were polled and each answered in favor of the plaintiff in the amount of $20,000.)

THE COURT: All right. Record the verdict.

CHIEF DEPUTY CLERK: Members of the jury, hearken unto your verdict as the Court hath recorded it: In the issue joined wherein Peter Menio is plaintiff and the Philadelphia, Bethlehem and New England Railroad Company is defendant, Civil Action No. 26813, you find for the plaintiff and against the defendant and assess damages in the sum of $20,000, and so say you all?

THE JURY: We do.

### APPENDIX "B"

MR. O'BRIEN: May it please Your Honor, ladies and gentlemen, I will be very brief.

I would like to comment that Mr. Griffin must feel quite desperate about this case or have very little confidence in the case when he will accuse me of being like Hitler, and I will not comment further on that, but I will go right to the issues, because I do not want to argue to you ladies and gentlemen on that plane.

I just want to go over two facts which I think are important in answer to Mr. Griffin, and only two, and that is, number one, whether this car kicked off that hill by itself. He said there was no witnesses around; nobody saw it.

Mr. Jones was the man down at the switch. He drew on the plot here where Becker was and where Menio was when he said it. Becker was here. He testified that he was the one that yelled to Menio that the car is loose and that Mr. Menio chased it.

Now—

MR. GRIFFIN: If Your Honor please, I—

THE COURT: Mr. Griffin, that comports with my recollection. Now, he has a perfect right to argue. It will be for the jury's recollection ultimately.

Now, you commented and I said nothing. Mr. O'Brien now is commenting. It will be for the jury's recollection, as you yourself said time and again, it will be for the jury as to what their recollection of the testimony was.

Go ahead, Mr. O'Brien.