## Kearton v. Quaker City Auctioneers Inc.

*Reginald A. Krasney,* for plaintiff.

*Richard J. Margolis,* for defendant.

*William E. Scott,* for additional defendants Satriale and French Creek Millwork.

*Daniel S. Altschuler,* for additional defendant Lancaster Development Co.

PAPALINI, *J.,* December 19, 2007—Plaintiff Jack G. Kearton filed an appeal for post-trial relief and for new trial on damages.

Defendant Quaker City Auctioneers filed an appeal for post-trial relief in the form of a judgment n.o.v.

Plaintiff Kearton and defendant Quaker City Auctioneers have each filed an appeal of our order of September 27, 2007, denying their motions for post-trial relief.

## I. FACTS

[On February 23, 2007, an involuntary directed verdict granted in favor of additional defendants, Gloria M. Satriale, trustee of estate of French Creek Millwork and the estate of French Creek Millwork Inc.]

On August 27, 2003, plaintiff attended a bankruptcy auction being held to liquidate the personal property of French Creek Millwork located at 735 Fox Chase in Coatesville. The auction was being conducted by defendant Quaker City within an industrial warehouse which French Creek had leased to be the site of its operations. While standing in an aisle way, plaintiff was hit by an object on the back of the left knee. Plaintiff testified that he had no idea what struck him or why.

Plaintiff called two witnesses to establish liability. Plaintiff called his ex-girlfriend, Maria Press, and his former business partner, Ed Brigante.

Ms. Press testified that she saw three or four 12-foot long poles clearly visible leaning in a corner of the wall. There were approximately 15 to 20 people in the area. After standing in the vicinity of the poles for some time, she observed a gentleman go into the area where the poles were situated and moments later, one of them fell and bounced off the floor and into the back of plaintiff's left knee.

Mr. Brigante testified that he also observed these poles leaning against the wall. The rods were not an item tagged for auction sale. After about five to 10 minutes in the area, Mr. Brigante was struck on the left wrist from behind by a falling rod. The rod then deflected off of him and struck plaintiff on the back of the left knee. He observed someone moving away from the area where the rod was immediately after the incident.

## II. PROCEDURAL HISTORY

(1) Plaintiff Kearton brought suit against the defendant Quaker City as a result of his lower back and knee injuries sustained after plaintiff was hit in the back of his left leg from a rod that fell over while plaintiff was attending a bankruptcy auction on August 27, 2003.

(2) Plaintiff filed suit on March 30, 2005, alleging that defendant was liable for failing to maintain the premises on which the auction was being held.

(3) Trial commenced on February 9, 2007, and a jury verdict for plaintiff and against defendant in the amount of $47,119.55 was returned on February 23, 2007.

(4) Plaintiff now seeks post-trial relief and a new trial as to damages.

(5) Plaintiff filed a motion for delay damages, pursuant to Pennsylvania Rule of Civil Procedure 238 in the amount of $2,931.

(6) Defendant moved for directed verdict at the close of the evidence, which was denied. Pa.R.C.P. §226(b).

(7) Defendant filed a post-trial motion and seeks a judgment n.o.v. arguing that, based on the facts presented at trial, plaintiff should not recover.

(8) Plaintiff Kearton and defendant Quaker City Auctioneers have each filed an appeal of our order of September 27, 2007, denying their motions for post-trial relief.

### III. ISSUES

#### A. *Plaintiff Kearton Raises the Following Issues on Appeal*

(1) The court erred by requiring that question no. 4 of the jury instructions be worded as it was, specifically as

to whether the left total knee replacement surgery "was caused" by this incident.

(2) The issue for the jury was not whether this incident "caused" plaintiff's left total knee replacement; rather, the issue was whether this incident was "a factual cause" of plaintiff's left knee replacement since plaintiff's left knee was arthritic and would have needed a total knee replacement within two years of the time of this incident had the accident not happened.

(3) The court erred in not submitting the following proposed jury verdict question no. 5, which asked "do you find that Mr. Kearton was required to undergo left total knee replacement surgery sooner than he otherwise may have had to because of this incident?"

(4) The court erred by not charging the jury on plaintiff's proposed points for charge nos. 8 and 9, as to legal liability for aggravation of a pre-existing condition.

(5) The jury's award of $47,119.55 was manifestly against the weight of the evidence because plaintiff suffered a herniated disc in his back, radiating pain, and need for significant treatment.

### B. *Defendant Quaker City Auctioneers Raises the Following Issues on Appeal*

(1) In order to impose liability on a possessor of land, a plaintiff must present evidence tending to prove that the possessor deviated from some "standard of care."

(2) There was no evidence presented at trial that defendant Quaker City created a dangerous condition, or likewise, that it knew or should have known of any dangerous condition.

(3) Plaintiff presented two liability witnesses at trial, and they admitted to not knowing why the rod fell over.

(4) In the absence of any evidence as to what caused the pole to fall, the jury was left to speculate as to why it may have done so, and moreover, to speculate about how Quaker City may have breached any duty owed.

## IV. DISCUSSION

### A. *Plaintiff's Appeal for New Trial on Damages*

#### 1. Wording of the Jury Verdict Sheet—Question No. 4

Plaintiff's appeal that he is entitled to a new trial on damages should be denied because his objections to the wording of the jury verdict sheet have been waived for failure to make timely objections. Plaintiff contends that we erred in requiring that question no. 4 be worded as it was, specifically as to whether the left total knee replacement surgery "was caused" by this incident, and that the plaintiff objected to this wording. Plaintiff argues that the issue for the jury was not whether this incident "caused" plaintiff's left knee replacement; rather, the issue was whether this incident was "a factual cause" of plaintiff's need for knee replacement surgery. Plaintiff states that this distinction in wording was critically important given that plaintiff's left knee was arthritic (and yet completely functional prior to this incident, as admitted by defendant's medical expert), but would in all likelihood eventually need to be replaced at some point in the future.

It is "axiomatic that, in order to preserve an issue for review, litigants must make timely and specific objections during trial and raise the issue in post-trial motions." *Harman ex rel. Harman v. Borah,* 562 Pa. 455, 471, 756 A.2d 1116, 1124 (2004). The reason timely and specific

objections at trials are necessary is to provide the trial court with an opportunity to correct any alleged trial error at the earliest opportunity. *Id.*

Here, plaintiff did not object to the verdict sheet during the trial proceedings and, thus, his objections in the post-trial motion have been waived. Furthermore, plaintiff had at least three opportunities to raise his objections to the verdict sheet. On the first occasion, plaintiff was specifically asked about question no. 4. The following discussion took place:

"The Court: There is a question that was agreed upon by counsel for the plaintiff and for the defendant, Quaker City, that the questions they are going to ask the jury is, whatever question that ends up to be, but the wording is going to be this, do you find that the plaintiff's left total knee replacement was caused by the accident, yes or no.

"If a jury answers yes, both of you have had a stipulation that you will pay for the medical bills in the amount of—I don't know what it is, 50, $60,000.

"Mr. Ridenour: In that ball park.

"The Court: Whatever you agree on stipulation.

"So if the jury answers yes, you must automatically pay them for the medical bills.

"So agreed?

"Mr. Coppock: Yes.

"The Court: Plaintiff's counsel agrees. Defense counsel agrees." (N.T. 2/20/07 pp. 162-63.)

On the second occasion, we read all five questions on the verdict sheet, and then asked, "Is there any problem with any of these questions?" Plaintiff's counsel responded, "I don't believe so, your honor." (NT. 2/20/07 p. 166.)

On the third occasion, on the following day at trial, the verdict sheet again was brought up. The court asked the parties, "Is there any other objection to any of the other questions?" There, plaintiff's counsel again made no objection to question no. 4, regarding plaintiff's total knee replacement. (N.T. 2/21/07 pp. 4-7.)

2. Proposed Jury Verdict Sheet—Question No. 5

Plaintiff's appeal for a new trial on damages should be denied because the proposed jury verdict question no. 5 was properly rejected through the discretionary power of the court and the issues raised in proposed jury verdict question no. 5 were addressed in other jury instructions. Plaintiff argues that the court erred in not submitting the following proposed jury verdict question no. 5, which asked "do you find that Mr. Kearton was required to undergo left total knee replacement surgery sooner than he otherwise may have had to because of this incident?"

A party is not entitled to special findings, and submitting them to a jury is left to the discretion of the trial court. *Willinger v. Mercy Catholic Medical Center,* 482 Pa. 441, 445-46 n.4, 393 A.2d 1188, 1190 n.4 (1978). A trial judge may grant or refuse a request for specific findings on the basis of whether such would add to a logical and reasonable understanding of the issue. *Id.* "To permit the jury to return special findings, where they are unnecessary, can create misleading issues and defeat justice." *Id.; Greet v. Arned Corporation,* 412 Pa. 292, 297, 194 A.2d 343, 345 (1963).

Here, the jury was fully aware of the issues regarding plaintiff's left total knee replacement surgery through question no. 4, which asked whether plaintiff's knee

replacement was caused by the incident. This question was not improper, misleading nor confusing. Additionally, the court properly instructed the jury on "factual cause" and then properly reflected the necessity for "factual cause" on the jury verdict sheet as to question no. 2. Furthermore, the jury was also asked, through questions nos. 3 and 4, to make two special findings, regarding whether the medical treatment plaintiff received to his lower back and left knee were necessitated by the accident. Thus, the court, in its discretionary power to reject special findings, properly refused plaintiff's request because plaintiff's proposed question was unnecessary in light of the other jury questions that addressed the same issue.

### 3. Plaintiff's Proposed Points for Charge Nos. 8 and 9

Plaintiff is not entitled to a new trial on damages regarding plaintiff's proposed points for charge nos. 8 and 9 because the court properly gave the Pennsylvania Suggested Standard Jury Instructions for pre-existing conditions and contributing causes. Plaintiff contends that the court erred by not charging the jury on plaintiff's proposed points for charge no. 8 and no. 9, which plaintiff contends are correct statements of the law as to legal liability for aggravation of a pre-existing condition.

A trial court is not required to give "cumulative" jury instructions proposed by the parties even if they are better or clearer than the standard instructions. *Stewart v. Motts*, 539 Pa. 596, 608, 654 A.2d 535, 541 (1995). The test is only whether the trial court gave "adequate instructions." *Id.*

Here, plaintiff has waived this issue because plaintiff's counsel made no objections to the standard jury instructions when the court advised the parties it would be giving these instructions. Assuming, arguendo, that plaintiff's counsel did not waive this issue, plaintiff's contentions regarding the proposed points for charge nos. 8 and 9 are without merit. The Pennsylvania Suggested Standard Jury Instruction adequately informed the jury regarding the aggravation of pre-existing conditions and contributory causes.

## 4. Jury's Award

Plaintiff is not entitled to a new trial on the issue of damages because the amount of the verdict was adequate compensation for his injuries. Plaintiff contends that his expert witness' medical testimony proved that plaintiff suffered from a herniated disc that resulted in severe back pain radiating into his legs and continues up until the present day. Additionally, plaintiff contends that defendant presented no expert medical testimony to contradict plaintiff's medical expert witness, Robert A. Ruggiero Jr. M.D. Finally, plaintiff argues that the award was inadequate because the jury specifically found in a jury question that plaintiff's lower back injury was caused by the incident.

The standard for setting aside an inadequate jury verdict as "when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff." *Davis v. Mullen,* 565 Pa. 386, 391, 773 A.2d 764, 766 (2001). In light of this standard, reversal of an inadequate verdict is only appropri-

ate where "the injustice of the verdict stands forth like a beacon". *Id.* Moreover, in reaching its verdict, the jury is free to reject a plaintiff's subjective complaints, as well as any expert's opinions based upon those complaints. *Van Kirk v. O'Toole,* 857 A.2d 183, 186 (Pa. Super. 2004).

Here, the jury awarded plaintiff $40,000 plus an additional $7,119.55 for the lower back injury that occurred as a result to the present knee incident, for a total amount of $47,119.55. The court finds this to be a fair and just compensation for plaintiff's injuries.

Even if the jury believed that plaintiff suffered a lower back injury, the jury was free to reject plaintiff's subjective complaints, as well as expert's opinions based upon those complaints. See *Van Kirk, supra.* Plaintiff's medical expert witness, Dr. Ruggiero, acknowledged that an MRI conducted of plaintiff's lower back prior to the present incident on May 1, 1997, revealed he already had a disc herniation. Thus, the jury had grounds to reasonably doubt the severity of plaintiff's back injuries caused by the incident since plaintiff was shown to have pre-existing lower back problems. Dr. Ruggiero stated that a 1997 study showed that plaintiff had a disc herniation in the central part of his lower back. (Deposition of Robert A. Ruggiero 02/08/07 p. 112.)

Dr. Ruggiero also confirmed that an EMG conducted on October 22, 2003, showed that plaintiff had a "chronic lumbar radiculopathy." *Id.* at 76. He explained that plaintiff had a "long-standing radiculopathy or nerve irritation" and that the back pain was "more of a long-standing or maybe prior injury." *Id.* Furthermore, Dr. Ruggiero stated that plaintiff had told him that he experienced soreness in his lower back prior to the

incident, that "it will be sore but not painful." *Id.* at 112.

Although plaintiff inserted in his brief in support of his motion for a new trial on damages that he will need lumbar fusion surgery, Dr. Ruggiero stated that plaintiff may not be a candidate for this surgery until he underwent a discography. *Id.* at 114-15. This test would determine whether plaintiff's herniation was the source of his lower back pain.

However, plaintiff has not undergone this test.

Next, plaintiff argues that defendant did not present any expert witness testimony to rebut plaintiff's case. However, defendant is not obligated to rebut plaintiff's case. Plaintiff must prove his own case and then it is up to a jury to believe or disbelieve plaintiff's claim.

However, defendant did offer the expert medical testimony of Alexander A. Sapega who testified that plaintiff did not make any complaints regarding lower back pain at the emergency room on the date of the incident in question and that this was inconsistent with someone who allegedly suffered a severe disc injury.

Finally, plaintiff contends that the award was inadequate because the jury specifically found in a jury question that plaintiff's lower back injury was caused by the incident. However, the answer to the special finding only addressed a cause of plaintiff's injury, but did not ask the jury members the extent of plaintiff's damages.

Jury verdict sheet question no. 5 addressed plaintiff's damages specifically and the jury awarded plaintiff $40,000 plus medical expenses.

Thus, plaintiff's award of damages was adequate compensation that bears a reasonable relation to his in-

juries, and it was not the "product of passion, prejudice, partiality, or corruption." See *Mullen,* 565 Pa. at 391, 773 A.2d at 766.

### B. *Defendant's Appeal for Judgment n.o.v.*

### 1. Legal Standard

"There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant.

"With the first, the court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor. . . .

"[W]ith the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure." *Campo v. St. Luke's Hospital,* 755 A.2d 20, 23 (Pa. Super. 2000). (citations omitted) Therefore, the court was correct in its decision not to grant judgment notwithstanding the verdict.

### 2. Possessor of Land—Dangerous Condition

Defendant is not entitled to a judgment n.o.v. because defendant owed a duty to plaintiff to protect business invitees from unreasonable risks and defendant either knew, or should have known, of the dangerous condition that existed on the premises. Defendant argues that there was no evidence presented at trial that defendant created any dangerous condition and that the evidence presented by plaintiff's witnesses was that they did not know who

had placed the poles there. Additionally, defendant argues that it was never established that the pole which allegedly struck plaintiff had been one of the poles that witnesses saw leaning on the corner wall prior to the accident and that neither of plaintiff's witnesses knew what caused the pole to fall. Furthermore, defendant contends that there was not any notice that a dangerous condition existed.

A business invitee is defined in the Restatement (Second) of Torts, §332(3) as:

"Section 332. Invitee defined

"(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."

It is well settled that the issue of whether a dangerous condition exists is not a question of law but rather a question of fact for the jury to resolve. *Dean v. PennDOT,* 561 Pa. 503, 751 A.2d 1130 (2000); *Kilgore v. City of Philadelphia,* 553 Pa. 22, 717 A.2d 514 (1998); *PennDOT v. Patton,* 546 Pa. 562, 686 A.2d 1302 (1997).

" 'Whether a duty exists under a particular set of facts is a question of law.' *Petrongola v. Comcast-Spectacor L.P.,* 789 A.2d 204, 209 (Pa. Super. 2001) (quoting *Herczeg v. Hampton Township Municipal Authority,* 766 A.2d 866, 871 (Pa. Super. 2001), *appeal denied,* 567 Pa. 742, 788 A.2d 376 (2001)), *appeal denied,* 569 Pa. 694, 803 A.2d 736 (2002). 'The duty owed to a business invitee is the highest duty owed to any entrant upon land. The landowner is under an affirmative duty to protect a business visitor not only against known dangers but also against those which might be discovered with reasonable care.' *Emge v. Hogosky,* 712 A.2d 315, 317 (Pa. Super.

1998). (citation omitted) In determining the scope of duty property owners owe to business invitees, we have relied on Restatement (Second) of Torts §343, which provides:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, if but only if, he:

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger.

"See *Neve v. Insalaco's,* 771 A.2d 786, 790 (Pa. Super. 2001) (quoting Restatement (Second) of Torts §343)." *Campisi v. Acme Markets Inc.,* 915 A.2d 117, 119 (Pa. Super. 2006).

Moreover, while the mere occurrence of an accident does not establish negligence, negligence may be established by circumstantial evidence. Where there can be a reasonable inference drawn from the facts that an accident was caused by negligence, the issue is one for the jury. *Yesko v. Baille Industries Inc.,* 311 Pa. Super. 605, 458 A.2d 268 (1983); *Laubach v. Haigh,* 433 Pa. 487, 252 A.2d 682 (1969); *Gash v. Lautsenhezer,* 405 Pa. 312, 176 A.2d 90 (1961); *Carter v. United Novelty & Premium Co.,* 389 Pa. 198, 132 A.2d 202 (1957).

Here, defendant's judgment n.o.v. appeal should be denied because the jury found that a dangerous condition did, in fact, exist and defendant owed plaintiff a duty to

inspect the premises with reasonable care as a matter of law since plaintiff was a business invitee. With all factual inferences decided adverse to the movant defendant, the law does not require a verdict in defendant's favor.

The evidence adduced at trial showed that several 12-foot long, steel poles were located in the same room where auction attendees were permitted. (N.T. 2/12/07 pp. 165-66.) These poles were standing up and leaning against the wall in the vicinity of approximately 15-20 people. (N.T. 2/12/07 p. 158.) The jury may have found the placement of these steel poles standing in the corner to be a dangerous condition on the premises.

The issue of whether a dangerous condition exists is not a question of law, but rather a question for the jury to decide. See *Dean v. PennDOT,* 561 Pa. 503, 751 A.2d 1130 (2000).

Furthermore, since plaintiff was an auction attendee and he was there to bid on items being auctioned off, this court found plaintiff to be a business invitee of defendant because plaintiff was invited to enter the land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

Under the Restatement (Second) of Torts, §332(3), a business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of land. Since plaintiff was a business invitee, defendant owed plaintiff a duty of reasonable care to discover dangerous conditions that would be an unreasonable risk to the invitee.

Plaintiff's witness that accompanied him to the auction, Maria Press, testified that that she saw these steel

poles leaning up against the wall for at least 35 to 40 minutes before the incident. (N.T. 2/12/07 p. 163.)

Eric Merback, the president and sole shareholder of the defendant, testified that it was his concern to keep the premises safe for the attendees and that had he seen the poles standing against the wall, he would have removed them. (N.T. 2/16/07 pp. 40, 41, 48.)

Defendant also had employees stationed on the premises and walking around while the auction was taking place to ensure the attendees' safety. (N.T. 2/16/07 pp. 52-53.)

Furthermore, while plaintiff and his witness, Ms. Press, did not actually see the pipe fall down and hit plaintiff's knee, nor did they have first-hand knowledge as to what caused it to fall over, circumstantial evidence can prove negligence on the part of defendant. See *Yesko,* 311 Pa. Super. 605, 458 A.2d 268, *supra.*

Circumstantial evidence consists of proof of facts, or circumstances, from which it is reasonable to infer the existence of another fact. It is enough if the plaintiff produces evidence that may properly be found by the jury to justify an inference that the defendant's negligence was the proximate (legal) cause of the accident because such evidence outweighs, even though it does not exclude, an inference that the defendant was not negligent or that the defendant's negligence was not the proximate cause of the accident. *Smith v. Bell Telephone Company,* 397 Pa. 134, 153 A.2d 477 (1959); *Lear v. Shirk's Motor Express Corporation,* 397 Pa. 144, 152 A.2d 883 (1959).

Therefore, a reasonable jury could find that a dangerous condition existed in 12-foot steel pipes leaning freely against the wall at the auction and that the danger-

ous condition existed for a sufficient amount of time to put defendant, and defendant's employees, on notice of the dangerous condition. The jury may have also inferred, through circumstantial evidence, that the object that hit plaintiff's knee was one of the steel pipes that Ms. Press testified seeing during the 35 to 40 minutes prior to the accident.

Mr. Brigante testified that he observed these poles leaning against the wall. The rods were not an item tagged for auction sale. After about five to 10 minutes in the area, Mr. Brigante was struck on the left wrist from behind by a falling rod. The rod then deflected off of him and struck plaintiff on the back of the left knee. He observed someone moving away from the area where the rod was immediately after the incident.

Thus, defendant's appeal for judgment n.o.v. should be denied because (1) a reasonable jury could find that a dangerous condition existed, and (2) defendant owed plaintiff a duty to exercise reasonable care to keep the premises safe from unreasonable risks as a matter of law since plaintiff was a business invitee.

## C. *Delay Damages*

Plaintiff contends that he is entitled to delay damages for the period of time from April 12, 2006 through February 23, 2007.

Pennsylvania Rule of Civil Procedure 238 provides, in pertinent part:

"*Rule 238. Damages for delay in actions for bodily injury, death or property damage*

"(a)(1) At the request of the plaintiff in a civil action seeking monetary relief for bodily injury, death or prop-

erty damage, damages for delay shall be added to the amount of compensatory damages awarded against each defendant or additional defendant found to be liable to the plaintiff in the verdict of a jury, in the decision of the court in a non-jury trial or in the award of arbitrators appointed under section 7361 of the Judicial Code, 42 Pa.C.S. §7361, and shall become part of the verdict, decision or award.

"(3) Damages for delay shall be calculated at the rate equal to the prime rate as listed in the first edition of the *Wall Street Journal* published for each calendar year for which the damages are awarded, plus one percent, not compounded.

"(3)(i) If a motion for post-trial relief has been filed under Rule 227.1 and a motion for delay damages is pending, a judgment may not be entered until disposition has been made of all motions filed under Rule 227.1 and this rule."

Here, the court finds for plaintiff and shall be awarded $2,931 in delay damages from the time period of April 12, 2006 through February 23, 2007. The period of time from April 12, 2006 through December 31, 2006, is to be computed at the yearly rate of 8.25 percent. The period of time from January 1, 2007 through February 23, 2007, is to be computed at the yearly rate of 9.25 percent.[1]

## V. CONCLUSION

Plaintiff's appeal for new trial on damages should be denied.

---

1. *Kearton v. Quaker City Auctioneers Inc.*'s verdict sheet is attached. (Not published herein.)

Plaintiff's appeal for delay damages should be granted in the amount of $2,931.

Defendant's appeal for judgment n.o.v. should be denied.