## Butcher v. Newburger et al., Appellants.

548

Argued April 24, 1935.   Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*John P. Connelly,* for appellants.

*Geoffrey Cunniff,* with him *John W. Crolly* and *Philip Dorfman,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, May 27, 1935:

Defendants, who are stockbrokers, appeal from the judgment entered on a verdict in favor of plaintiff, in an action to recover back the amount paid by plaintiff for certain stock purchased by them for him.   The purchase was made by the manager of defendants' office at Atlantic City, N. J., who was authorized to act for them throughout, and all the other matters hereinafter detailed, down to the time of bringing suit, were had with him person-

ally, and not with defendants or any of them, save as he was their alter ego. Defendants offered no evidence at the trial, but contented themselves with presenting a point for binding instructions in their favor, and in this court limit themselves in the same way. The action of the court below in refusing that point was clearly right, and the judgment must accordingly be affirmed.

On August 21, 1930, plaintiff gave to defendants' manager, an order to purchase for him 100 shares of the Utilities Power & Light Corporation "A" stock. He paid at that time, $500 on account of the purchase price for which he was given a receipt as follows:

"NEW YORK, Aug. 21, 1930.

"Received of Earl Butcher, Five hundred ($500) Dollars on acct of 100 shares of U.L.A. Stock, balance to be paid on delivery of stock.

"NEWBURGER, HENDERSON & LOEB."

Admittedly the "U.L.A." in that receipt means Utilities Power & Light Corporation "A" stock. On September 9, 1930, plaintiff paid the manager an additional $2,900, on the same account, and was given a receipt which stated that the "Balance [was] Two hundred four Dollars and forty-one cents." On September 23, 1930, plaintiff paid the balance stated, and was given a receipt as follows:

"NEW YORK, Sept. 23, 1930.

"Received of Earl Butcher—Two hundred four Dollars and forty one cents ($204.41) Balance on 100 shares Ula stock.        NEWBURGER, HENDERSON & LOEB."

At the same time the manager handed to plaintiff a certificate for 100 shares of the common (nonvoting) stock of the Utilities Power & Light Corporation, telling him that it was "100 shares of U.L.A. stock." Plaintiff did not know the difference between the certificates for the two kinds of stock, but defendants' manager did. Plaintiff put the stock away, and did not see it again for nearly two years, when he needed some money and took the certificate to bank to get a loan on it. Then, for the first

time, he learned that the certificate was not for Class A stock which he had purchased and paid for, but for common (nonvoting) stock which was worth less than one-half the amount he had paid. He at once went to defendants' place of business, tendered back the certificate to the manager and demanded a return of the money he had paid. All his attempts to induce defendants to pay him having failed, he brought the present suit.

In their argument on this appeal, defendants rely entirely upon two points, neither of which have any applicability to the situation here existing: (1) Was not plaintiff bound by the fact that, if he had carefully examined the certificate when it was presented to him, he might have learned he was not getting Class A stock? and (2) Was not plaintiff bound because he neglected to repudiate the transaction within a reasonable time?

Defendants do not deny that plaintiff thought he was getting what he had employed their manager to purchase for him, what he had paid in full for, and what their manager said, both orally and in the receipts which he gave to plaintiff, that they delivered to him. They do not deny that they and their manager knew the difference between common stock which was delivered and Class A stock for which plaintiff had paid. They do not deny that they received the full price for the Class A stock which plaintiff was to receive, and that that sum was over twice the value of the common stock, which he in fact received. They do not deny that he was ignorant on the subject and relied on their manager, and suffered the loss which he claims because he did so rely. They do no deny but that if they can defeat plaintiff's claim in this suit, they will, through their manager, have obtained at their client's expense, by means of a deception, and still retain, the difference in market value between the two kinds of stock, viz., in the neighborhood of $2,000. So far as the record of this trial disclosed there is not even an excuse for their attempt to retain the fruit of the wrong perpetrated by their manager on plaintiff as their customer.

Moreover, the technical defenses which they attempt to interpose, are of no avail. This court has already once told them that their relation to their customers "is in the nature of a trust to be executed for their principal": Vollmer v. Newburger, 277 Pa. 282. Many authorities so hold. See Meyer on The Law of Stockbrokers and Stock Exchanges, 251; Batterson v. Raymond, 149 N. Y. S. 706; Wahl v. Tracy, 139 Wisc. 668; Tatsuno v. Kasai, 259 Pac. (Utah) 318; McShane v. Quillin, 227 Pac. (Idaho) 554; Rubin v. Salomon, 241 N. Y. S. 495; Hunt v. Samuels Co., 236 Ky. 729. This relationship "the jury had a right to consider": Emery v. Third Nat. Bank of Pgh., 308 Pa. 504, 513; Bower v. Fenn, 90 Pa. 359; Fisher v. Worrall, 5 W. & S. 478; Edelman v. Latshaw, 180 Pa. 419. Where, as here, the parties dealt on a basis of trust and confidence, the rule is to hold the party making a representation bound by it: Edelman v. Latshaw, supra; Rothermel v. Phillips, 292 Pa. 371, 376. In 26 Corpus Juris, page 1137, it is said that if fiduciary "relations obtain, nothing short of actual knowledge will prevent recovery for misrepresentations." The jury have decided they did obtain here, and that plaintiff did not have such actual knowledge. Indeed they could not well have concluded otherwise. In the instant case plaintiff testified, and no one contradicted him, that he did not know anything about the stock, would not have known the difference between Class A stock and common stock if he had read the certificate, and that because of his "implicit reliance in Mr. Morales," defendants' manager, he took the certificate which the latter handed him. This the jury believed. Hence, when plaintiff contracted and paid for a given kind of stock, and was told by defendants' manager that they were delivering it to him, in law they warranted the stock to be as stated, and he had the right to implicitly rely thereon. Indeed, "Where there is a contract to sell or a sale of goods by description, there is an implied warranty that the goods shall correspond with the description": Section 14, Act of May 19, 1915, P. L.

543, 546. And section 12 of the same statute says that "Any affirmation of fact . . . by the seller relating to the goods is an express warranty if the natural tendency of such affirmation . . . is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon," as was the case here. It is true that the Act of 1915, supra, covered only sales of goods, which this stock was not, but the act was amended by that of April 27, 1925, P. L. 310, to include sales of choses in action, which the present sale was. Indeed, in this class of cases, the law was the same before the passage of either statute.

Under such circumstances, plaintiff had the right to rely on the manager's statement without inspecting that which was delivered to him, and this would be so even if plaintiff, by inspection, would have known he was not getting what he had bought, which was not the case here: Flatbush Corp. v. Hatoff, 214 N. Y. S. 138.

What has been said disposes of both of the points argued by defendants on this appeal.

The judgment of the court below is affirmed.