**ELSE E. CALLWOOD, Appellant**

v.

**CLIFFORD W. L. CALLWOOD**

No. 11624

United States Court of Appeals
Third Circuit

Argued January 31, 1956

Decided June 4, 1956

*See, also, 233 F.2d 784*

---

JAMES A. BOUGH, Charlotte Amalie, St. Thomas, Virgin Islands, *for appellant*

JOHN L. PHILLIPS, JR., Charlotte Amalie, St. Thomas, Virgin Islands, *for appellee*

Before, MARIS, MAGRUDER and WOODBURY, *Circuit Judges*

WOODBURY, *Circuit Judge*

This litigation grows out of an attempt to partition several parcels of real property situated in the town of Charlotte Amalie on the Island of St. Thomas in the Virgin Islands, which for a number of years have been a bone of contention between the parties, a mother and her son. See Callwood v. Kean, 3 Cir., 1951 (2 V.I. 526), 189 F.2d 565; Callwood v. Virgin Islands National Bank, 3 Cir., 1955 (3 V.I. 3), 221 F. 2d 770.

The properties involved formed part of the community property, or joint estate, of the defendant-appellant Elsa or Else E. Callwood and her late husband, Richard Edgar Callwood who died in Germany on January 17, 1917, leaving a joint will executed by him and his wife in St. Thomas on April 25, 1911. The pertinent provisions of that will were set out and its legal consequences for present purposes were in large part determined in Callwood v. Kean, supra. We need not recapitulate here, for we are not now primarily concerned with the respective rights derived by the parties in the community property under that will. It is enough to say that construing that will in ac-

cordance with the law of Denmark, which was in force in St. Thomas at the time of the testator's death, this court in Callwood v. Kean held: 1) That Elsa as the surviving spouse had the right to remain in possession of the entire joint estate, undivided and to the exclusion of their children,[1] until her remarriage. 2) That as the surviving spouse in possession of the property she "was entitled to sell or mortgage it or otherwise to deal with or dispose of it as absolute owner, although perhaps under a duty to compensate their children as heirs for any undue diminution in the aggregate value of their inheritance." 3) But that her right to dispose of the joint estate was limited by a provision in the will to the effect that the real properties could "only be sold or mortgaged with the consent" of one, or in the event of his death, of another of two named individuals or the appointee of the survivor of them, or in default of appointment by the survivor, a suitable person appointed by the District Court of the Virgin Islands.[2]

Our present concern is with an agreement entered into by the parties to partition the properties and a deed executed by them to carry out their agreement which both parties signed on Sunday, August 30, 1953.[3] There can be no doubt that the parties signed the agreement and the deed. Nor can there be any doubt that within hours after the defendant signed she refused to acknowledge the deed for the reason, so she said, that she felt that

[1] Their children consisted of the plaintiff and a daughter, Waldfriede, who married in 1934 and died in 1939. The plaintiff claims to have acquired his deceased sister's rights in the St. Thomas real properties by an assignment from her husband, the validity and effectiveness of which does not appear to be questioned in this litigation.

[2] Both individuals named in the will died years ago, the survivor without appointing a successor. In Callwood v. Kean this court held that the court below had power to appoint a successor and Mr. Carl A. Anduze is the present incumbent.

[3] The District Court held that contracts involving real property executed on Sunday are valid under local law and that ruling is not challenged on this appeal. We may assume, therefore, for the purposes of this case that it is correct and pay no further attention to it.

she had been tricked, over-persuaded, harassed, and browbeaten into affixing her signature to it. The plaintiff, in this situation, brought the present suit against his mother for specific performance of the partition agreement wherein more particularly he asked the court to "take proof of the execution" of the deed in accordance with Title II, ch. 15, § 17 of the (1921) Code of Laws of the Municipality of St. Thomas and St. John (28 V.I.C. § 43), and for an order certifying its due execution so that it might be recorded pursuant to the provisions of § 22 of ch. 15 of the Code (28 V.I.C. § 122) referred to above.[4]

At a pre-trial conference the issues for decision were limited to three of fact and one of law. The questions of fact were: 1) Whether the instruments (the agreement and the deed), were procured by the fraud, artifice, and trickery of the plaintiff's attorney. 2) Whether the defendant in signing the deed did so of her own free will with knowledge of its contents and with the intention of conveying the properties in the proportions therein set out. 3) Whether the Testamentary Guardian, Carl A. Anduze, referred to in footnote 2 above, had in fact given his consent to the defendant's execution of the deed. The question of law singled out for decision was whether the defendant had the power under the will to execute a valid conveyance of the property without the Testamentary Guardian's consent. By agreement an advisory jury was impaneled to hear the evidence and the first two factual questions were broken down into fifteen interrogatories for submission to it. The jury answered all of these interrogations in the plaintiff's favor, and the court then proceeded to analyze the evidence itself. In a full and carefully prepared opinion it confirmed the findings

[4]"Every conveyance acknowledged or proved or certified in the manner hereinbefore prescribed by the District Court, may be read in evidence without further proof thereof, and shall be entitled to be recorded in the office of the Recorder of Deeds; but such instrument, if not acknowledged, proved, or certified, shall not be recorded by the Recorder of Deeds."

of the jury on each separate question. The court made no finding as to whether or not the Testamentary Guardian had in fact consented to the transaction, but ruled that in the situation presented his consent was not necessary. It also disposed of some other legal questions raised by the defendant and then entered a judgment to the effect that both the agreement and the deed were valid and that both should be recorded simultaneously in accordance with the provisions of § 22 of ch. 15 (28 V.I.C. § 122), supra. This is the judgment from which the defendant has appealed.

The appellant strenuously contends on this appeal that both the jury and the court below erred in their evaluation of the evidence. She says that the jury erred in making, and the court in accepting, findings of fact contrary to the preponderance or weight of the evidence. Wherefore she argues that this court ought wholly to disregard the findings below and on its own independent reading of the evidence in the record make findings of fact contrary to those of the jury and the District Court. The argument rests upon an erroneous premise.

■ Whatever the old practice may have been on appeals from the District Court of the Virgin Islands in civil cases arising under local law, whether appeals in such cases were trials de novo as said in Callwood v. Kean, supra (2 V.I. 557), 189 F.2d 581, or whether in such cases this court only exercised a somewhat broader power to re-evaluate the evidence than on appeals from United States district Courts, need not concern us here. For Congress in § 25 of the Revised Organic Act of the Virgin Islands (Act July 22, 1954, ch. 558 § 25), 68 Stat. 507 (prec. 1 V.I.C.), 48 U.S.C. § 1615, passed some six months before this case was tried below, made the Federal Rules of Civil Procedure applicable in cases such as this, and

Rule 52(a) of F.R.C.P. as amended in 1946, 28 U.S.C., in pertinent part provides:

"In all actions tried upon the facts without a jury or with an advisory jury . . . Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

Thus, whatever the inquiry in cases like this may have been in the past, our inquiry now is not directed to the weight or preponderance of the evidence but only to its legal sufficiency to support the findings.

■ So confined, our inquiry is soon completed. The evidence is conflicting; the appellant frankly concedes as much. Either the advisory jury or the District Court could have found the facts in favor of the plaintiff or in favor of the defendant. Both found the facts in the plaintiff's favor, and a study of the record discloses ample evidentiary basis for the findings. We therefore take it as established that the defendant was neither defrauded, nor harassed, hurried, over-persuaded, or brow-beaten into signing the agreement and deed but did so voluntarily and willingly, acting under no misapprehension, and with knowledge of their contents.

The appellant also contends that the court below erred in failing to instruct the advisory jury as required by § 1(1), (2) and (5) of ch. 62, Title III (5 V.I.C. § 740) of the local code of laws referred to above. These sections require that in each case the jurors shall be instructed generally that their determinations of fact shall not be made arbitrarily but "with legal discretion and in subordination to the rules of evidence"; that they are not bound to reach a conclusion on any issue by the number of witnesses to testify on one side or the other but by the persuasiveness of their testimony; and that in civil cases the burden of proof is on the party asserting the affirmative of any issue, and when the evidence is con-

tradictory their finding should be according to the preponderance of the evidence. The contention warrants only brief discussion.

■ ■ Counsel for the appellant did not make his objection known at the trial and Rule 51 F.R.C.P. (28 U.S.C.) provides in part:

"No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

We might, perhaps, in an extreme situation consider an objection to the charge, even in a civil case, made for the first time on appeal. We would not do so, however, unless the error in the charge was fundamental and highly prejudicial, and our failure to consider the error would result in a gross miscarriage of justice. That, however, is not the situation here. The sections of the statute summarized above deal only with generalities as to how the jury should weigh and consider evidence. The omission to charge in accordance with its requirements could as well have harmed the plaintiff as the defendant. Since the defendant-appellant can point to no specific harm to her cause by the failure to charge as the statute requires there is no reason to depart from the requirement of Rule 51, supra.

We turn now to the question of substantive law presented.

■ This court in Callwood v. Kean discussed at some length the general powers and duties under the law of Denmark of a Tilsynsvaerge, or as the Court translated the term, Testamentary Guardian. But the Court in that case did not have occasion to advert to the duties and powers of such a person in the situation before us here, for it was not presented. Counsel have cited us no authority, and our own investigations have brought no authority

586

to light, giving any indication one way or the other as to whether, under general Danish law a Tilsynsvaerge's or Testamentary Guardian's consent is necessary to a partition transaction between a surviving spouse legally in possession of formerly community property and an heir. This does not seem to us important, however, for we are not concerned with the general powers and duties under Danish law of a Tilsynsvaerge for the reason that the will does not use that technical term. Instead, as to the real property, it merely provides that the consent of a named individual, or his successor, is required in the event of a "sale or mortgage" by the surviving spouse in possession. Certainly the transaction between the mother and her son which we are considering was not a mortgage. Nor was it a sale in the ordinary sense of the term. It was a division or partition of properties between persons having separate undivided interests therein as a result of which one was to receive absolute title to some parcels and the other absolute title to other parcels. In substance and effect it amounted to an exchange of property interests less than absolute and it was between blood kin both of whom derived their interests from a common source. We do not think the transaction falls into the classification of a "sale" in any ordinary sense, and we therefore agree with the District Court that under the terms of the will the Testamentary Guardian's consent was not necessary to validate the defendant's conveyance.

Further arguments of the appellant based upon asserted discrepancies between the deed and the partition agreement have been considered only to be rejected. We think the arguments are too lacking in merit to warrant discussion.

The judgment of the district court will be affirmed.