Anita PRITCHARD, Administratrix of the Estate of Otto E. Pritchard, Deceased, Appellant,

v.

LIGGETT & MYERS TOBACCO COMPANY, a Corporation, Appellee.

No. 14802.

United States Court of Appeals Third Circuit.

Argued Dec. 8, 1964.

Decided July 26, 1965.

James E. McLaughlin, McArdle, Harrington, Feeney & McLaughlin, Pittsburgh, Pa. (James P. McArdle, Pittsburgh, Pa., on the brief), for appellant.

William H. Eckert, Eckert, Seamans & Cherin, Pittsburgh, Pa. (John H. Morgan, William B. Mallin, C. Arthur Wilson, Jr., Pittsburgh, Pa., Bethuel M. Webster, Frederick P. Haas, Webster, Sheffield, Fleischmann, Hitchcock & Chrystie, New York City, on the brief), for appellee.

Before GANEY, SMITH and FREEDMAN, Circuit Judges.

WILLIAM F. SMITH, Circuit Judge.

The plaintiff brought this action for personal injury alleging that he contracted lung cancer as a result of having smoked Chesterfield cigarettes for many years. The claims for relief, stated in separate counts of the complaint, alleged negligence and breach of warranty as the bases of liability. The defendant, admittedly the manufacturer of the cigarettes, denied the allegations of the complaint and pleaded assumption of risk as an affirmative defense to each of the claims. The jurisdiction of the court below was invoked on the ground of diversity of citizenship and therefore under the facts of the case the law of Pennsylvania was applicable.

The action was heretofore before this Court on an appeal from a judgment entered on a directed verdict in favor of the defendant, 3 Cir., 295 F.2d 292. The judgment was reversed and a new trial was granted pursuant to the mandate. The present appeal is from a judgment entered on a jury verdict in favor of the defendant. The earlier opinion of this Court contains a comprehensive sum-

mary of the pertinent evidence offered in the first trial. Since the evidence offered at the second trial did not differ substantially, we find it necessary to set forth herein only such additional facts as may be relevant to the narrow issues raised on this appeal.

The plaintiff, who was 63 years old at the time of the second trial, admittedly smoked cigarettes since he was 15 years of age. He was an habitual cigarette smoker for several years prior to 1924, when he began smoking Chesterfields for the first time. Thereafter, and during the critical period, between sometime in 1924 and the latter part of 1953, he smoked Chesterfields regularly, consuming "at least a carton" per week. There was ample evidence in the record from which the jury could have found, as it did, that the smoking of Chesterfields was a cause of the lung cancer, which was diagnosed and removed in 1953. This finding is not an issue on this appeal.

The alleged warranties were contained in a series of advertisements published periodically in both newspapers and magazines. These advertisements featured in bold type such factual affirmations as the following: "Chesterfields Are Best For You"; "Chesterfields Are As Pure As The Water You Drink And The Food You Eat"; "A Good Cigarette Can Cause No Ills"; "Nose, Throat And Accessory Organs Not Adversely Affected By Smoking Chesterfields"; "Play Safe Smoke Chesterfields." (See also the earlier opinion of this Court). Many of the advertisements contained assurances that the affirmations were based upon extensive research and the opinions of medical specialists. There was implicit in these assurances a strong suggestion that while other brands of cigarettes might be harmful, Chesterfields were not.

This Court stated in its earlier opinion: "The evidence compellingly points to an express warranty, for the defendant, by means of various advertising media, not only repeatedly assured plaintiff that smoking Chesterfields was ab-

solutely harmless, but in addition the jury could very well have concluded that there were express assurances of no harmful effect on the lungs."

The issues were submitted to the jury on a series of special interrogatories, Fed.Rules Civ.Proc., rule 49(a), 28 U.S. C.A., all of which, except one, were answered adversely to the plaintiff. The jury found: (1) the smoking of Chesterfield cigarettes by the plaintiff was "the cause, or one of the causes," of the cancer; (2) the defendant was not chargeable with negligence; (3) the defendant made no "express warranties upon which the plaintiff relied and by which he was induced to purchase" the cigarettes; and (4) the plaintiff assumed the risk of injury by his smoking the cigarettes. A judgment for the defendant in accord with the special findings was entered.

The plaintiff moved for a new trial on the grounds, among others, that the verdict on the breach of warranty issue was against the weight of the evidence, and the Court's instructions to the jury on the same issue were erroneous. The motion was denied. The only grounds here urged as a basis for reversal are those relating to the breach of warranty issue; the others have been abandoned.

DENIAL OF MOTION FOR NEW TRIAL.

The plaintiff argues that the verdict was against the weight of the evidence and that the denial of his motion for a new trial, based on this ground, was error. It is well settled that a motion for a new trial on the ground herein urged is addressed to the sound discretion of the trial judge and its denial is not ordinarily reviewable on appeal. Silverii v. Kramer, 314 F.2d 407, 413 (3rd Cir. 1963); Lind v. Schenley Industries, Inc., 278 F.2d 79, 89 (3rd Cir. 1960), cert. den. 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60; Magee v. General Motors Corp., 213 F.2d 899 (3rd Cir. 1954). Since the judgment must be reversed on other grounds, we see no need to discuss the merits of the argument.

## RELIANCE AS REQUISITE TO RIGHT OF ACTION

The breach of warranty issue was tried on the assumption that reliance of the purchaser was an essential element of an express warranty as defined by statute, infra, and therefore requisite to a cause of action for its breach. The plaintiff endeavored to prove by his own testimony that the advertisements were an inducement and that in reliance thereon he regularly purchased and smoked Chesterfields. This testimony, when subjected to the test of cross-examination, fell far short of the mark and apparently failed to impress the jury.

The Court instructed the jury, consistently with the forgeoing assumption, as follows: "The law of Pennsylvania provides that any affirmation of fact, or any promise by the seller relating to the goods, is an express warranty if the natural tendency of such an affirmation or promise is to induce the buyer to purchase the goods, *and if the buyer purchases relying thereon.*" (Emphasis supplied).

These instructions were undoubtedly consonant with the majority rule which is predicated on a construction of Section 12 of the Uniform Sales Act,[1] as adopted by many of the States. Pedroli v. Russell, 157 Cal.App.2d 281, 320 P.2d 873 (Cal.1958); Rogers v. Toni Home Permanent Co., 167 Ohio St. 244, 147 N.E. 2d 612 (1958); Frank v. Salomon, 376 Ill. 439, 34 N.E.2d 424 (1941); see also text and Annotations, Frumer and Friedman, Products Liability, Vol. 1, § 16.04 [4]. However, under the law of Pennsylvania the rule is not applicable where the factual affirmations run to the public and their natural tendency is to induce a purchase.

The applicable section of The Sales Act of Pennsylvania, 69 P.S. § 121, reads as follows:[2]

"Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and *if the buyer purchases the goods relying thereon* no affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only, shall be construed as a warranty." (Emphasis supplied).

The quoted version differs from that which appears in The Uniform Sales Act.

It will be noted that in Section 12 of The Uniform Sales Act the conditional phrase "and if the buyer purchases the goods relying thereon," at the end of which a period appears, modifies the antecedent clause. In the version hereinabove quoted the same phrase, at the end of which no punctuation appears, introduces a proviso creating an exception to the general definition appearing in the first clause. While punctuation is seldom a reliable guide to statutory construction it is a relevant factor where, as here, its effect is to change the import of the statute. The materiality of the change is a significant indication that it was the intent of the Pennsylvania legislature not to follow Section 12 of The Uniform Sales Act as written.

An express warranty, within the meaning of the Pennsylvania statute, as we construe it, is any factual affirmation or promise, the natural tendency of which "is to induce the buyer to purchase the goods." Reliance of the buyer is not a requisite of either the warranty or a right of action for its breach. It

---

1. "Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, *and if the buyer purchases the goods relying thereon.* No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only, shall be construed as a warranty." (Emphasis supplied.)

2. Superseded by Uniform Commercial Code, § 2–313, adopted April 6, 1953.

follows that the instructions given were erroneous, as was the submission to the jury of the issue of reliance. Under the facts of this case the issue of reliance was wholly irrelevant; the only issue was whether the factual affirmations contained in the many advertisements were such as would naturally tend "to induce the buyer to purchase the goods."

This Court was called upon to construe the statute in the case of Mannsz v. Macwhyte Co., 155 F.2d 445 (1946). Therein the respective claims for damages, one for wrongful death and another for personal injury, were predicated upon the alleged breach of an express warranty contained in a manual circulated by the manufacturer. The plaintiffs attempted to prove that the purchase of a wire rope, which broke while being used to support a scaffold, was purchased in reliance on certain representations as to strength contained in the manual. They failed in this proof; in fact, there was no evidence in the record that the manual ever came to the attention of either the purchaser, who died in the accident, or his injured employee.

This Court held that where the factual representations run to the public and are such as would naturally induce a purchase neither privity of contract nor actual reliance on the representations is an essential element of a right of action under the statute. Accord Worley v. Proctor & Gamble Mfg. Co., 241 Mo.App. 1114, 253 S.W.2d 532 (1952); see also Williston on Sales, Vol. 1, §§ 206 and 208; Frumer and Friedman, Products Liability, supra. If a manufacturer extends to the public an express warranty that his product is harmless and thereafter a purchaser suffers personal injury as a result of its breach, the manufacturer cannot disclaim liability on the ground that there was no reliance on the warranty. The express warranty is an integral part of the contract of sale and may not be disaffirmed, after a breach has occurred, on the ground that the purchaser did not actually rely on it.

In the Mannsz case, supra, this Court sustained a judgment in favor of the defendant but on the ground that the wire rope had been used for a purpose not intended by the manufacturer and this misuse placed it beyond the scope of warranty.

### ASSUMPTION OF RISK AS DEFENSE

■ An action for personal injury based upon the breach of an express warranty, although it sounds also in tort, is in substance one for breach of contract. The availability of assumption of risk as a defense in such an action depends upon which of two concepts is adopted. The distinction may be of little importance in an action for personal injury based on negligence but it is important where, as here, an additional basis of liability is the alleged breach of an express warranty. See Koshorek v. Pennsylvania Railroad Company, 318 F.2d 364, 367 (3rd Cir. 1963).

■■ Assumption of risk in its secondary sense is ordinarily synonymous with contributory negligence and involves a failure to exercise reasonable care for one's own safety. Under this concept recovery is barred because of the plaintiff's departure from the standard of reasonable conduct and notwithstanding the misconduct of the defendant. Potter v. Brittan, 286 F.2d 521 (3rd Cir. 1961) and cases hereinafter cited. Harper and James, The Law of Torts, § 22.2, p. 1201; Prosser, Law of Torts, 2nd Ed. § 55. Assumption of risk in its primary and strict sense involves voluntary exposure to an obvious or known danger which negates liability. Under this concept recovery is barred because the plaintiff is assumed to have relieved the defendant of any duty to protect him. Ibid.

In Prosser, Law of Torts, supra, cited with approval in Koshorek v. Pennsylvania Railroad Company, supra, the principles determinative of the distinction are stated as follows: "In working out the distinction, the courts have arrived at the conclusion that assumption of risk

is a matter of knowledge of the danger and intelligent acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of reasonable conduct, however unwilling or protesting the plaintiff may be. The two may co-exist, or either may exist without the other. The difference is frequently one between risks which were in fact known to the plaintiff, or so obvious that he must be taken to have known of them, and risks which he merely might have discovered by the exercise of ordinary care." See also Potter v. Brittan, supra; Sullivan v. Shell Oil Company, 234 F.2d 733, 739 (9th Cir. 1956), cert. den. 352 U.S. 925, 77 S.Ct. 221, 1 L.Ed.2d 160.

It has been held by the Superior Court of Pennsylvania, an intermediate court of appeals, that contributory negligence is inapposite as a defense in an action for breach of warranty. Jarnot v. Ford Motor Company, 191 Pa.Super. 422, 156 A.2d 568 (1959). We have found, and the parties to this appeal have cited, no other case in point. We are therefore obliged to follow this decision in the absence of persuasive evidence that the highest court of the State would reach a different conclusion. McLouth Steel Corp. v. Mesta Machine Co., 214 F.2d 608, 610 (3rd Cir. 1954) cert. den. Hartford Acc. & Indem. Co. v. Foster, 348 U.S. 873, 75 S.Ct. 109, 99 L.Ed. 687; St. Clair v. Eastern Airlines, Inc., 302 F.2d 477 (2nd Cir. 1962).

The rule as announced by the Superior Court appears to represent the majority view and is supported by substantial authority in other jurisdictions. Green v. American Tobacco Co., 325 F.2d 673, 679 (5th Cir. 1963), cert. den. 377 U.S. 943, 84 S.Ct. 1349, 12 L.Ed.2d 306; Brown v. Chapman, 304 F.2d 149, 163 (9th Cir. 1962); Hansen v. Firestone Tire and Rubber Company, 276 F.2d 254, 258 (6th Cir. 1960); see also Frumer and Friedman, supra, § 16.01 [3]. It was held in the cited cases that in an action for personal injury, predicated on breach of warranty, the defense of contributory negligence is inapposite. There are other decisions to the same effect. It seems reasonable to assume that the highest court of Pennsylvania would reach the same conclusion.

We are of the view, and so hold, that since contributory negligence is not available as a defense in an action for personal injury based on breach of warranty, assumption of risk in the sense of contributory negligence is likewise not available. However, if a consumer uses a product for a purpose not intended by the manufacturer and suffers an injury as a result, he may not recover because such misuse is beyond the scope of the warranty. See Frumer and Friedman, supra, § 16.01 [3]. This was in essence the holding of this Court in Mannsz v. Macwhyte Co., supra.

It is the law of Pennsylvania that a person who voluntarily exposes himself to a danger of which he has knowledge, or has had notice, assumes the attendant risk. He may not recover for personal injuries sustained as the result of the exposure, because under the circumstances the person responsible for the danger is relieved of any duty to protect the injured person. Kopp v. R. S. Noonan, Inc., 385 Pa. 460, 123 A.2d 429 (1956); Cutler v. Peck Lumber Mfg. Co., 350 Pa. 8, 37 A.2d 739 (1944). It is clear from these cases that assumption of risk, in its primary and strict sense, is available as a defense in an action for personal injuries based upon negligence. It follows as a matter of logic that the same defense is apposite in an action based on breach of express warranty.

The defense of assumption of risk rested solely on the testimony of the plaintiff which, viewed in the light most favorable to the defendant, was clearly insufficient. There was no evidence upon which the jury could have predicated a determination that the plaintiff either knew or had notice of the harmful effects of Chesterfields. Absent such evidence, the defense of assumption of risk failed.

There was overwhelming evidence that many of the defendant's advertisements carried factual affirmations, professedly based on medical research, that Chesterfields were safe and smoking them could have no adverse effect on "the nose, throat and accessory organs." These advertisements were calculated to overcome any fears the potential consumers might have had as to the harmful effects of cigarettes, and particularly Chesterfields. Under the circumstances it is difficult to perceive how the plaintiff, a cabinetmaker with no scientific background, could have been charged with notice or knowledge of a danger, which the defendant, with its professed superior knowledge, extensively advertised did not exist. We should emphasize that the medical researchers engaged by the defendant in 1952, apparently failed to detect the danger.

 As hereinabove noted, assumption of risk was apposite as a defense in the action based upon breach of express warranty but only in its primary sense. However, the issue raised by the defense was submitted to the jury on general instructions which were inadequate and confusing in that they failed to differentiate between the primary and secondary concepts; in the instructions these concepts were treated as equivalent. Absent such a differentiation, the instructions as given did not correctly relate the law to the issue and were therefore erroneous. Atkinson v. Roth, 297 F.2d 570, 574 (3rd Cir. 1962); McNello v. John B. Kelly, Inc., 283 F.2d 96, 101, 102 (3rd Cir. 1960). It was also error to submit the issue to the jury in the absence of evidence to support the defense. Morran v. Pennsylvania Railroad Company, 321 F.2d 402 (3rd Cir. 1963); O'Neill v. Reading Company, 306 F.2d 204 (3rd Cir. 1962); Smith v. Ellerman Lines, 247 F.2d 761, 766 (3rd Cir. 1957).

ARGUMENTS IN SUPPORT OF AFFIRMANCE

The defendant urges two principal grounds for affirmance and against reversal of the judgment. Preliminarily to our discussion of these grounds it should be stated that the trial errors in this case are attributable, at least in part, to the ineptness of plaintiff's counsel. He made no objections to the Court's instructions or the interrogatories on which the issues were submitted to the jury.

 The defendant argues that the plaintiff here advances in support of reversal a theory different from that on which the case was tried and submitted to the jury. This argument has no support in the record. The plaintiff alleged the defendant's breach of warranty as one basis of liability. The issues tried and submitted to the jury were those raised in the denial of the allegation and the defense of assumption of risk. Reversal of the judgment is sought solely on the grounds that the court below committed error in the course of the trial. This is clearly not a case in which there has been a change of theory.

 The defendant argues also that since the plaintiff interposed no objection to either the court's instructions or the interrogatories submitted to the jury, the questions raised on this appeal should not be considered. It is the general rule that the appellate court will not consider trial errors to which no timely objection has been made. The rule is not inexorable and is subject to exception. Hormel v. Helvering, 312 U.S. 552 557, 558, 61 S.Ct. 719, 85 L.Ed. 1037, Mazer v. Lipschutz, 327 F.2d 42, 52 (3rd Cir. 1964); McNello v. John B. Kelly, Inc., supra; Callwood v. Callwood, 233 F.2d 784, 788 (3rd Cir. 1956). Where it is apparent on the face of the record that a miscarriage of justice may have resulted from counsel's failure to properly protect the interest of his client by timely objection, the error must be noticed and rectified. Ibid. Since the errors in the trial of this case were fundamental and highly prejudicial, this exception to the general rule is applicable.

Judges Ganey and Freedman concur in the result in this case and in that portion of the opinion which deals with

the defense of assumption of risk. The majority view on the question of reliance is discussed in the opinion of Judge Freedman, in which Judge Ganey joins.

The judgment of the court below will be reversed and the action will be remanded with the direction that a new trial be had.

FREEDMAN, Circuit Judge (concurring).

I concur in the reversal of the judgment and the award of a new trial. I believe a new trial is required because the charge of the court did not adequately instruct the jury on the requirements of § 12 of the Sales Act of May 19, 1915, P.L. 543 (69 Purdon's Pa.Stat.Annot. § 121), which applies to this action, although it has since been superseded by the Uniform Commercial Code (Act of April 6, 1953, P.L. 3, § 2–313, 12A Purdon's Pa.Stat.Annot. § 2–313).

▆▆▆▆ In the first place, the charge is inadequate because it gave the jury no explanation of the meaning of § 12 of the Sales Act as it applied to the facts in the case which the jury was called upon to decide. An academic recitation of the language of a statute without any direction as to how it may be applied to the disputed facts before the jury is too general to furnish adequate guidance to them. McNello v. John B. Kelly, Inc., 283 F.2d 96 (3 Cir. 1960). Yet it was on this basis that the court submitted to the jury, which answered "No", Interrogatory No. 5: "Did the defendant make any express warranties upon which the plaintiff relied and by which he was induced to purchase Chesterfield cigarettes?"

▆▆▆▆ The charge was defective not only for vagueness but also because of another error. It instructed the jury that they could not find an express warranty unless the seller "actually intended to be bound by his statement."[1] Such a requirement is contrary to the law of Pennsylvania since the adoption of the Sales Act of 1915 by which Pennsylvania departed from its previous adherence to the English rule. See 1 Williston on Sales (Rev.Ed.1948), §§ 198–200; cf. Rothermel v. Phillips, 292 Pa. 371, 375–376, 141 A. 241 (1928). The true test is not whether the seller actually intended to be bound by his statement but rather whether he made an affirmation of fact the natural tendency of which was to induce the sale and which did in fact induce it. Act of May 19, 1915, P.L. 543, § 12, 69 Purdon's Pa.Stat.Annot. § 121; 1 Williston on Sales (Rev.Ed.1948), § 199.

Although thus joining in the order of reversal and remand for new trial, I believe it would be erroneous to retry the case on the supposed principle that reliance by the buyer on an express warranty is not required under § 12 of the Pennsylvania Sales Act. The opinion of Judge Smith, which is the opinion of the Court on all other questions in the case, would eliminate the requirement of reliance and thus makes irrelevant the jury's finding that no reliance in fact existed.[2] Its support for this unusual conclusion, admittedly contrary to the general interpretation of § 12 of the Uniform Sales Act, is a difference in punctuation between the section proposed by the Commissioners on Uniform State Laws and the Pennsylvania statute. Section 12 of the Uniform Sales Act, as it was adopted by the Commissioners (See 1 Uniform Laws Annot. (1950), p. 173; 1 Williston on Sales (Rev.Ed.1948), § 194) reads as follows: "Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to

---

1. R. 165a.

2. Although Interrogatory No. 5 contained two questions, i. e., did the defendant make an express warranty and did the plaintiff rely upon it, I shall assume that the jury's negative answer may be applied to both questions.

be a statement of the seller's opinion only shall be construed as a warranty." The same section as it appears in the Pennsylvania pamphlet law reads precisely the same except for punctuation; there is no period after the word "thereon" and there is a comma after "seller's opinion only" The punctuation of the Uniform Sales Act, as the main opinion points out, makes it clear that the phrase dealing with reliance modifies the antecedent clause relating to express warranty and that the remaining clause deals with a separate matter, i. e., that no affirmation of value or statement of the seller's opinion shall be construed as a warranty. But because of the absence of the period in the Pennsylvania version the main opinion infers an intention that the reliance provision be deemed a part of the remaining clause, so that it would read: "and if the buyer purchases the goods relying thereon no affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only, shall be construed as a warranty." This to my mind makes the reliance provision of the section meaningless. For it is redundant to speak of reliance in regard to statements of value or opinion when they are themselves not to be considered as warranties. If such a construction would mean only that an affirmation of value or a statement of the seller's opinion shall not be construed as a warranty even if the buyer purchases the goods relying thereon, it would be an emphatic statement of the unnecessary. Moreover, it might well be argued from such a construction that such affirmations of value or statements of opinion can be construed as warranties if the buyer purchases the goods without relying on them. Reliance would take affirmations of value or statements of the seller's opinion outside the circle of warranty but non-reliance would bring them in. This is the opposite of what would normally be intended, i. e., that where there is only an affirmation of value or a statement of opinion there can be no warranty irrespective of any reliance. So it has been held in Pennsylvania. Rothermel v. Phillips, 292 Pa. 371, 375–376, 141 A. 241 (1928).

■ ■ Section 12 of the Pennsylvania Act contains the same words as the Uniform Act. It can hardly be supposed that an intention to make such an important change in the Uniform Act on its adoption in Pennsylvania would not have been expressed in some change in language rather than in punctuation. Especially is this true in Pennsylvania, where the practice for many years has been to print bills without any punctuation and to leave it to the office of the Secretary of the Commonwealth to insert punctuation after the bill has been enacted.[3] The bill as it was adopted by the Legislature was without punctuation, and in accordance with the legislative practice § 12 contained no period or commas.[4] Since the language of the statute is identical with the Uniform Act and was unpunctuated at the time the statute was adopted it should be construed to have the same meaning as the Uniform Act. To arrive at a different and strange construction solely because of the absence of a period is to raise punctuation above its true significance and exalt a clerical act to an exercise of law-making power. It is established in Pennsylvania as a result of the legislative practice that punctuation cannot be relied upon in ascertaining the meaning of a statute. Thus in Wilson v. Wilson, 126 Pa.Super. 423, 191 A. 666 (1937), the question arose whether sterility or incapacity to procreate was a ground for divorce. The causes for divorce in Pennsylvania had been laid down in the early Acts of September 19, 1785, 2 Sm.Laws 343, 12 Pa.Stat. at L. 94, § 2, and March 13, 1815, P.L. 150, 6 Sm.Laws 286, § 1.

3. See Act of April 9, 1929, P.L. 177, § 804, 71 Purdon's Pa.Stat.Annot. § 274. See also Act of May 4, 1905, P.L. 384, since repealed by Act of June 7, 1923, P.L. 498, § 2901, 71 P.S. § 31.

4. See 1915 Legislative Journal—House, pp. 3210, 3220, reprinting the bill on final passage.

Both of these early statutes authorized divorce from a party who "at the time of the contract, was and still is naturally impotent or incapable of procreation." In the codification of the divorce laws of the Commonwealth in The Divorce Law of May 2, 1929, P.L. 1237, § 10(1), 23 Purdon's Pa.Stat.Annot. § 10, this language was repeated without change, but a comma was inserted before the phrase "or incapable of procreation". Plaintiff pointed to the comma in support of his contention that sterility was a ground for divorce separate from impotence. The court, rejecting this argument, said (p. 426, 191 A. p. 667): "It is of no importance that the present act has added a comma after the word 'impotent.' 'There is no punctuation in a statute, which ought to rule.' In re Gyger's Estate, 65 Pa. 311, 312." The Wilson case was not an aberrant decision but followed a principle which a few months later the Legislature itself expressed in the Statutory Construction Act of May 28, 1937, P.L. 1019, § 53, 46 Purdon's Pa. Stat.Annot. § 553: "In no case shall the punctuation of a law control or affect the intention of the Legislature in the enactment thereof." Later, in Kuntz to Use of Kuntz v. Alliance Sand Co., 156 Pa. Super. 563, 40 A.2d 864 (1945), in rejecting an argument that the meaning of the statute be based on the absence of a comma, Reno, J., a former Attorney General of Pennsylvania, said: "The short and complete answer to the argument is that no significance attaches to the punctuation of a statute. The legislature does not enact the punctuation which appears in the printed statutes. Bills introduced in the legislature may contain punctuation marks but they are entirely deleted by the printer. The printed bills which the legislature considers and passes and the Governor approves are totally devoid of punctuation marks. They are inserted later in the office of the Secretary of the Commonwealth when copies of the laws are prepared for the printer of the Pamphlet Laws, but they have no legislative sanction. For these reasons the legislature has expressly commanded that its intention shall not be controlled or affected by the punctuation [citations]. Reading the cited section, without punctuation, as it left the legislature and the Governor * * * [the court construed the statute]". (pp. 565–566, 40 A.2d p. 865).

The well established Pennsylvania practice which was later cast in the form of a statutory command is not weakened because of a stray decision running the other way. For if the meaning of legislation is to be affected by punctuation, the official who punctuates the bill would be engaged in a legislative act and the Legislature would be held to have delegated legislative power to the executive in violation of the Pennsylvania Constitution.[5] Pennsylvania's legislative practice may well appear to be outmoded and the principle on which it is based—that the language of a bill should be so clear that no punctuation is necessary to aid in the expression of its

5. See the interesting commentary by Schulz and Stahl on "The Enactment and Construction of Statutes in Pennsylvania", 46 Purdon's Pa.Stat.Annot., pp. 1, 30–31. The one or two cases running the other way are distinguished by the authors as "sports" and their statement why such views are erroneous is unanswerable: "[B]ills in the General Assembly are not punctuated, the periods and commas and other marks being inserted after the enactment by the Secretary of the Commonwealth. * * *

"The thought behind the unpunctuated bill is reputedly that the wording by itself should be so clear as to leave no doubt as to meaning which needs to be cleared up or changed by punctuation. If the sense is inserted or changed by the punctuation, the officer who punctuates the bill is actually legislating, contrary to the provisions of the Pennsylvania Constitution assigning the legislative power to the General Assembly." (p. 30).

For this reason the statement in Yeager Unemployment Compensation Case, 196 Pa.Super. 162, 173 A.2d 802 (1961) must be regarded as ill-considered dictum. See also the dissent in that case by Judge Flood at pp. 173–180, 173 A.2d 802, especially Note 1.

meaning—may well be an unattainable ideal.[6] But we may not ascribe to the statute an intention derived from some other practice, one which the Legislature has not adopted.

We recognized and applied the Pennsylvania practice in construing a Pennsylvania statute in In Re Industrial Sapphire Mfg. Co., 182 F.2d 589 (3 Cir. 1950), where Judge Goodrich said: "Once we are freed from the commas the statute, we think, presents no difficulty and we give it the construction we think is the natural one." (p. 591).

 I think § 12 of the Pennsylvania Sales Act should also receive a natural and sensible construction, one which its draftsman—who was Professor Williston and not the Pennsylvania Legislature— obviously intended. An intention so clearly and authoritatively written should not be uprotted and rendered meaningless by the subordinate element of punctuation, especially when it is irrelevant.

For half a century the courts of Pennsylvania have indicated without any apparent suspicion of doubt that § 12 of the Sales Act of 1915 requires reliance on an express warranty. They have quoted the statute in a form which assumes that the last clause is a separate sentence and that the provision regarding reliance modifies the preceding language dealing with express warranty rather than the subsequent clause that an affirmation of value and a statement of seller's opinion alone do not constitute a warranty. Illustrations of this will be found in Butcher v. Newburger, 318 Pa. 547, 552, 179 A. 240 (1935), where the phrase on reliance is quoted as part of the description of express warranty and where if reliance were legally unnecessary much of the court's discussion would have been irrelevant. In C. D. Brown & Co., Inc. v. Standard Hide Co., 301 Pa. 543, 548, 152 A. 557 (1930), the court quoted the first part of § 12 as qualified by the requirement of reliance and then went on to say that a statement of value is excepted from the rule. In Yonker v. Vaneer, 91 Pa.Super. 157, 161 (1927), a charge requiring actual inducement was approved. See also Pantano v. Zamer Motor Sales Co., 170 Pa.Super. 317, 323, 85 A.2d 681 (1952), to the effect that there was no right of action for breach of warranty where the buyer relied on its own inspection rather than the warrantor's statement. Professor Williston, reviewing the changes effected in Pennsylvania by the Sales Act of 1915, concludes: "Although the effect

---

6. The effect of punctuation on meaning and how precision in language may minimize the need for punctuation are interestingly illustrated in DeVinne, The Practice of Typography: Correct Composition (1901), pp. 241, et seq., and Brossard, Punctuation of Statutes, 24 Oregon L.Rev. 157 (1945).

DeVinne, who has been very influential because he supervised the publishing of the Century Dictionary and Cyclopedia, states: "Rules are of value, whether they are found in grammars or are taught by proof-readers, but they can never take the place of an understanding of subject-matter. * * * Here is an illustration —a short sentence which can be made to convey contrary meanings by the insertion or omission of two commas.

"The prisoner said the witness was a convicted thief.

"The prisoner, said the witness, was a convicted thief." (p. 260).

Brossard, whose article was submitted as a report to the National Conference of Commissioners on Uniform State Laws, of which he was a member, shows how this sentence might properly have been written so that its meaning would not be altered by punctuation: "That sentence would not depend on points if it were reconstructed thus: 'The prisoner said that the witness was a convicted thief' or 'The witness said that the prisoner was a convicted thief.' Similar examples of bad syntax have been used to prove that meaning may hang on a comma. Here is one: 'Woman, without her, man would be a savage.' 'Woman, without her man, would be a savage.' Or take this schoolboy riddle: 'Would you rather a lion eat you, or a tiger?' The comma is relied on to keep the lion from eating the tiger. Those are mere plays on words. Word juggling may be indulged in for amusement; but a statute is no place to 'conjure with us in a double sense'." (p. 170).

of old decisions is hard to obliterate, the plain words of the Sales Act must override them, and it has ultimately been recognized that sufficient essentials of a warranty exist where there is an affirmation, the tendency of which is to induce the sale *and which does induce it.*" 1 Williston on Sales (Rev.Ed.1948), § 199, p. 512. (Emphasis added).[7]

In addition to the frequent instances in which the Pennsylvania courts have drawn the reliance phrase into the preceding portion of § 12 dealing with warranty, there are cases which show the necessary complement that the provision that affirmations of value or a statement of seller's opinion are not to be construed as a warranty is complete in itself and separate from the reliance clause. This is strikingly shown in Rothermel· v. Phillips, 292 Pa. 371, 375–376, 141 A. 241 (1928), where Mr. Justice Sadler quoted § 12 of the Pennsylvania Sales Act in two parts; in the first part quoting the language dealing with affirmations of fact or promises by the seller he included the clause relating to the buyer's reliance, but he excluded it in quoting the clause that affirmations of value or statements of the seller's opinion alone are not to be construed as a warranty. The case was then explicitly decided on the second clause of § 12.

It is clear, therefore, that the conclusion of the main opinion constitutes a wide departure from the settled view in Pennsylvania that § 12 of its Sales Act is the same as the Uniform Act, and creates an unwarranted gulf between the Pennsylvania Sales Act and the equivalent provision of the Commercial Code.

Reliance is a question of fact. In the language of the Sales Act the question is whether the buyer relied on an affirmation of fact or promise by the seller. The main opinion would remove this factual question and instead make the test under the Pennsylvania Sales Act whether the factual affirmation or promise had the natural tendency to induce the buyer to purchase the goods. Natural tendency to induce is not the same as actual reliance. It may be that in many cases the circumstances which will indicate the natural tendency to induce the buyer to purchase the goods will also be enough to show reliance. But this element of fact which is ever present should not be withdrawn from determination by the jury.

I do not consider that our decision in Mannsz v. Macwhyte Co., 155 F.2d 445 (3 Cir. 1946), stands in the way. There the injured plaintiff sued the manufacturer of wire rope for negligence and breach of express warranty. We sustained the dismissal of the action because of plaintiff's failure to prove either negligence in the manufacture of the rope or its inadequacy for its intend-

7. A contemporary expression of the understanding of § 12 of the Pennsylvania Sales Act is found in the discussion of § 2–313 of the Uniform Commercial Code. The Pennsylvania Bar Association's notes to the section state in regard to subsection (1) (a) dealing with express warranty: "Under the Code, the qualification that affirmations, etc. create a warranty if made 'as a basis of' the bargain, appears to be substantially the same as the 'reliance' qualification in § 12 of the Uniform Sales Act, 69 P.S. § 121 (repealed)." In discussing Subsection (2), dealing with affirmations of value or statements of seller's opinion, the Bar Association's note states: "The qualification as to statements of 'value' rephrases but does not appear materially to change § 12 of the Uniform Sales Act, 69 P.S. § 121 (repealed).": 12A Purdon's Pa.Stat. Annot., p. 162. Similarly, see the Report of the Subcommittee on the Proposed Uniform Commercial Code of the Joint State Government Commission of the Pennsylvania General Assembly (1952), p. 23.

The comment by the drafters of the Uniform Commercial Code confirms this view. They make it clear that what was formerly described as reliance is now absorbed as a factor which is made a basis of the bargain. Comment 3 to § 2–313 states that where a statement is made *during a bargain* no particular evidence of reliance need be shown, but that it remains a question of fact whether evidence *introduced by the defendant is* sufficient to show non-reliance.

ed use. In the course of the opinion it was said that in Henderson v. National Drug Co., 343 Pa. 601, 23 A.2d 743 (1942), Pennsylvania had adopted the principle of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F., 696 (1916), that privity was not required in a suit for negligence. The opinion then went on to state that the abolition of privity extended also to actions for breach of warranty and indicated that reliance on the representations was unnecessary. This statement, which went beyond the necessities of decision, was unsupported at the time. Since then the Supreme Court of Pennsylvania, while reiterating the view that privity is no longer required in an action for negligence, has emphatically declared that the privity requirement retains a definite vitality in suits for express warranty. The reason for this has been stated to be that a defendant should not be held to be a guarantor of his product in cases where liability should rest on negligence. The Court has been strict in maintaining that one who is not a purchaser may not maintain a claim of breach of warranty where there is an absence of privity, although it has extended the concept of purchaser to include, in addition to the immediate purchaser, the subpurchasers along the line from manufacturer to ultimate consumer.[8] Even subsequent purchasers may recover from the original seller only where his express promise may be said to be a part of the consideration for the purchase and is meant to be conveyed to and relied upon by subsequent purchasers. See Silverman v. Samuel Mal-

linger Co., 375 Pa. 422, 428–429, 100 A.2d 715 (1953); Hochgertel v. Canada Dry Corp., 409 Pa. 610, 616, 187 A.2d 575 (1963); Yentzer v. Taylor Wine Company, 414 Pa. 272, 199 A.2d 463 (1964). See also Driver v. F. A. Mitchell Co., 35 F.R.D. 226 (E.D.Pa.1964). In the present Pennsylvania law under the Uniform Commercial Code[9] the element of reliance on the part of the buyer will be absorbed in the determination of the basis of the bargain, but it will remain a question of fact to be determined by the jury where the seller seeks to show that his affirmation was not a part of the basis of the bargain.

I would hold, therefore, that the issue of reliance is not irrelevant and that whether the factual affirmations in the advertisements were such as would naturally tend to induce the buyer to purchase the goods was not the only issue. On the contrary, in my view it was necessary for the plaintiff to show that affirmations of fact relating to the goods had a natural tendency to induce the buyer to purchase the goods and that the buyer purchased the goods relying thereon. The jury could, in my view, have found that these requirements were met under the evidence in this case. They should have been told how the evidence bore on the question of natural tendency to inducement and how that same evidence was relevant to the question of reliance. This the court below did not undertake to do, and this it should do on a retrial.

I am authorized to state that Judge Ganey joins in this opinion.

---

8. With the adoption of the Uniform Commercial Code in Pennsylvania this rule has necessarily been expanded to include, by virtue of § 2–318 (12A Purdon's Pa.Stat.Annot. § 2–318), one who is in the family or household of the buyer or a guest in the buyer's home if it is rea-sonable to expect that he may use, consume or be affected by the goods. See Yentzer v. Taylor Wine Company, 414 Pa. 272, 199 A.2d 463 (1964).

9. Section 2–313, 12A Purdon's Pa.Stat. Annot. § 2–313.