Elinor M. RATAY, Appellant,

v.

The LINCOLN NATIONAL LIFE IN-SURANCE COMPANY.

No. 15936.

United States Court of Appeals Third Circuit.

Argued Oct. 31, 1966.

Decided May 16, 1967.

Samuel J. Goldstein, Pittsburgh, Pa., for appellant.

Alexander Black, Pittsburgh, Pa. (Clayton A. Sweeney, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., on the brief), for appellee.

Before GANEY, SMITH and FREEDMAN, Circuit Judges.

WILLIAM F. SMITH, Circuit Judge.

This action was brought by the plaintiff to recover the proceeds of an interim insurance contract on the life of her husband and under which she was the beneficiary. The present appeal is from a judgment in favor of the defendant entered on the jury's answers to certain special interrogatories. The plaintiff seeks reversal of the judgment and remand of the action for either the entry of judgment in her favor or a new trial. We are persuaded by our review of the record that the plaintiff is not entitled to the entry of judgment but she is entitled to a new trial.

On August 14, 1963, the plaintiff's husband made application to the defendant for term insurance on his life. He delivered to the agent Part One of an executed application and contemporaneously therewith his note in an amount equal to the first quarterly premium computed on the basis of a standard rate. He received a binding receipt on which the plaintiff's claim for damages is here predicated. On August 28, 1963, the applicant underwent a medical examination at which time he completed and delivered to the defendant's physician Part Two of the application. This part included the report of the medical examiner and the applicant's answers to questions relating to his prior medical history. While the application was pending and under consideration the applicant died on October 14 of a myocardial infarction resulting from arteriosclerosis. The application was declined on October 23, and in due course the plaintiff was notified.

The resolution of the first question for decision depends on the interpretation of the binding receipt, which reads in pertinent part as follows:

"If a full first premium in accordance with the published rates of the Company * * * has been paid at the time of [the] application and declaration of such payment is made therein, the insurance, subject to the terms and conditions of the policy contract * * * in use by the Company *at this date, shall take effect on the date of Part One or Part Two of the application, whichever is later,* provided: * * * (2) the application, Part Two, is duly completed * * and (4) the Proposed Insured is on this date in good health; otherwise the payment evidenced hereby shall be returned upon demand and surrender of this receipt." (Emphasis added).

The effect of receipts similar to the one quoted has been widely litigated and with diverse results. See Ransom v. Penn Mutual Life Insurance Company, 43 Cal. 2d 420, 274 P.2d 633, 635, 636 (1954); Simpson v. Prudential Insurance Company of America, 227 Md. 393, 177 A.2d 417, 421–425 (Ct.App.Md.1962).

The defendant does not deny the issuance of the binding receipt in exchange for the premium payment. However, it maintains that coverage thereunder was subject to a condition prece-

dent, the good health of the applicant when his application was finally completed.[1] There are decisions in which it has been held, in accordance with defendant's view, that a proviso relating to the good health of the proposed insured at the time of his application is a condition precedent which must be met before coverage comes into existence. Cliborn v. Lincoln National Life Insurance Co., 332 F.2d 645 (10th Cir. 1964) and the cases therein cited. This is not the law of Pennsylvania.

Recently the Supreme Court of Pennsylvania, called upon to construe a receipt essentially the same as the one involved in the instant case, held that the proviso was a condition subsequent, reserving to the insurer a right to terminate coverage if it determined that the insured was not in good health at the time of his application. Steelnack v. Knights Life Insurance Co. of America, 423 Pa. 205, 223 A.2d 734, decided November 15, 1966. See generally McAvoy Vitrified B. Co. v. North American L. Assur. Co., 395 Pa. 75, 149 A.2d 42 (1959).

In *Steelnack* the insurance company contested liability on the ground that coverage was not to become effective until after the proposed insured had submitted to a requested medical examination. The Court in passing on this defense stated:

> "Nothing in the * * * language [of the receipt] indicates that the insurance coverage was to be delayed until the medical examination took place and the insured was found to be in good health. In fact, the opposite is implicit therein, namely, that the coverage began on the date of the binder subject to being terminated if the medical examination revealed the insured not in good health."

The Court went on to hold:

> "At best, the requested medical examination could only be a condition subsequent, which could terminate the insurance coverage in the event the company found the insured's health to be such that it could refuse to take him even as an accident risk."

The decision is in line with that of the Supreme Court of California in Ransom v. Penn Mutual Life Insurance Company, supra. See also Metropolitan Life Insurance Company v. Grant, 268 F.2d 307 (9th Cir. 1959).

The defendant also argues that the judgment of the court below is sustainable on the jury's affirmative answers to special interrogatories 3 and 4. It construes these answers in the light of the interrogatories as tantamount to a finding that coverage under the receipt was terminated prior to the death of the insured. This construction completely overlooks the unequivocally negative answer of the jury special interrogatory 1, reading as follows:

> "Did the insurance company reject or decline Frank J. Ratay's application before his death on October 16, 1963?"

We are of the opinion that on the basis of the evidence in this case the answers to special interrogatories 1, 3 and 4 are consistent and therefore must be construed that way. Atlantic & Gulf Stevedores v. Ellerman Lines, 369 U.S. 355, 364, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962). Thus construed, the ground of the defendant's argument fails.

The defendant contested liability also on the ground that the decedent's answers to certain of the questions contained in Part Two of the application were false and fraudulent. The defendant now argues that the judgment of the lower court is supported by the jury's affirmative answer to a special interrogatory reading as follows:

> "Did Mr. Ratay make false statements, knowing them to be false, or otherwise act in bad faith in making them, when he answered questions 10, 12c, and 12h of Part II of the application?"

1. The court below adopted August 14 instead of August 28 as the critical date. The difference is of no relevant significance in our consideration of the issues before us.

**212**

The argument would be acceptable as valid if the fraud issue had been submitted to the jury on a proper instruction but it was not.

 The court correctly defined the elements of fraud but then instructed the jury that the burden was upon the defendant to prove each of the elements by a "fair preponderance of the credible evidence." This instruction was clearly erroneous. It is firmly established that under the law of Pennsylvania a party who alleges fraud, as either a defense or the basis of a claim, must prove the facts on which his allegation rests by evidence that is "clear, precise and indubitable." Gerfin v. Colonial Smelting & Refining Co., 374 Pa. 66, 97 A.2d 71, 72 (1953); Highmont Music Corp. v. J. M. Hoffman Co., 397 Pa. 345, 155 A.2d 363, 366 (1959). The evidence must be so cogent "as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts" alleged. Gerfin v. Colonial Smelting & Refining Co., supra, 74. The standard of proof is equally as exacting where, as here, fraud is raised as a defense to an action on a policy of insurance. New York Life Ins. Co. v. Brandwene, 316 Pa. 218, 172 A. 669, 670 (1934); Campdon v. Continental Assur. Co., 305 Pa. 253, 157 A. 464, 466 (1931); Suravitz v. Prudential Ins. Co. of America, 261 Pa. 390, 104 A. 754, 756 (1918); Equitable Life Assur., Etc. v. Dunn, 61 F.2d 450, 452 (3rd Cir. 1932).

 The record indicates that the plaintiff made no specific objection to the charge as given but was apparently content to rest on a general exception granted by the trial judge.[2] This inaction would ordinarily preclude our consideration of the error on this appeal. Federal Rules Civ.Proc., Rule 51, 28 U.S.C. A.; McNello v. John B. Kelly, Inc., 283 F.2d 96, 102 (3rd Cir. 1960); Callwood v. Callwood, 233 F.2d 784, 788 (3rd Cir. 1956). It remains for us to consider whether the error in the instruction was so fundamental and highly prejudicial as to justify our review of it despite the absence of a proper objection. Ibid. We think it was. The erroneous instruction related to a critical issue and cannot be regarded as harmless unless it affirmatively appears from the whole record that it was not prejudicial to the substantial rights of the plaintiff. McCandless v. United States, 298 U.S. 342, 347, 348, 56 S.Ct. 764, 80 L.Ed. 1205 (1936); United States v. McNally Pittsburg Manufacturing Corp., 342 F.2d 198, 202 (10th Cir. 1965); Sears v. Southern Pacific Company, 313 F.2d 498, 503 (9th Cir. 1963). It does not so appear in the instant case.

The judgment of the court below will be reversed and the action will be remanded with a direction that a new trial be ordered.

**2.** This practice, frequently followed by some lawyers, and at times encouraged by some judges, fails to comply with the rule. The practice should be discontinued and the judges should insist on strict compliance with the rule.